# Terre Haute Vitrified Brick Company et al., Appellees, v. The Montgomery County Loan & Trust Company et al., Appellants.

1. Local improvements—*propriety of issuance of vouchers.* By virtue of sections 87, 88, 90 and 91 of the Local Improvements Act vouchers should only be issued against the first instalment provided for and then only when payments on the contract fall due and the first instalment has not been collected. A voucher therefore cannot be a lien upon any instalment succeeding the first unless it has been exchanged for a bond.

442    APPELLATE COURTS OF ILLINOIS.

Terre Haute Etc. Co. v. The M. Co. L. & T. Co., 163 Ill. App. 441.

2. LOCAL IMPROVEMENTS—*what not payment to contractor.* A delivery by the city and the acceptance by a contractor of a voucher which is ineffective for any purpose other than as an admission of liability, is not a payment and does not form the basis of an accord and satisfaction.

3. LOCAL IMPROVEMENTS—*how city cannot liquidate damages suffered through contractor.* If a contractor has done defective work or has failed to complete his contract, or both, the city cannot (a bond having been given by such contractor) as against lienors arbitrarily withhold a portion of the contract price but must resort to the bond so held by it.

4. APPEALS AND ERRORS—*who cannot complain of alleged error.* A party not prejudiced cannot complain of an error alleged to have been committed.

Appeal from the Circuit Court of Montgomery county; the Hon. J. C. McBRIDE, Judge, presiding. Heard in this court at the May term, 1910. Affirmed. Opinion filed October 14, 1911. *Certiorari* denied by Supreme Court (making opinion final).

FRANK M. RAMEY, AMOS MILLER and LANE & COOPER, for appellants.

HILL & BULLINGTON, E. A. CRESS, JESSE M. FREELS and R. H. FLANNIGAN, for appellees.

*Per Curiam.* This is an appeal by the Montgomery County Loan & Trust Company (hereinafter designated as the Trust Company), Charles D. Frye, the City of Hillsboro, and Board of Local Improvements of the City of Hillsboro, from a decree of the circuit court of Montgomery county. The original bill was filed on March 24, 1908, by Howell & Dorsey, The Terre Haute Vitrified Brick Company, Clinton Paving Brick Company, Builders Supply & Coal Company, and Lewis McNutt, against the above named appellants, Guy C. Lane, collector of special assessments of the city of Hillsboro, and others, for the purpose of enforcing a lien against the money, bonds, vouchers or warrants due or to become due to appellant Frye, a contractor with the city of Hillsboro, for the improvement of certain streets in said city. The bill avers the

THIRD DISTRICT—OCTOBER, 1911.     443

Terre Haute Etc. Co. v. The M. Co. L. & T. Co., 163 Ill. App. 441.

passage by the city council of an ordinance, on July 18, 1906, and the execution of a written contract between the city and Frye for the improvement as specified in said ordinance; that out of a bond issue of $55,000, authorized to meet the expense of such improvement, the sum of $40,000 had been issued and delivered by the officers of the city, to said Frye. The bill further alleges that the complainants, after the execution of said contract, furnished said Frye material and labor which was to be and was used in the said improvement; that the amounts due to the respective complainants for the same were due and unpaid; that prior to the acceptance of the work done by the contractor, and prior to the payment to him for such work, the complainants caused to be served upon each of the defendants written notices of their respective claims due from said contractor, in accordance with the statute; that the said city after service of the said notices, accepted said work and issued to said Frye a voucher for the balance then due to him upon said contract; that said Frye assigned the same to the Trust Company; that by reason thereof the complainants were entitled to a lien on the money, bonds, or warrants due to the said Frye or to his assignees, whether due or to become due, issued or to be issued, regardless of in whose hands any voucher or other instrument might be, as assignee or otherwise; that on March 1, 1907, and prior to the time the materials furnished by the complainants had been sold and delivered to him, and prior to the completion of the work, the said Frye assigned said contract to the said Trust Company; that the said Trust Company, at the time of said assignment, knew that Frye was purchasing said material from the complainants, and knowingly permitted him to do so. On June 2, 1908, the Newman Akron Cement Company filed an intervening petition, alleging that it had furnished cement to Frye of the value of $716.56, setting up the same facts, and praying the same relief as in the

444      APPELLATE COURTS OF ILLINOIS.

Terre Haute Etc. Co. v. The M. Co. L. & T. Co., 163 Ill. App. 441.

original bill. On November 2, 1908, the Little & Hays
Investment Company (hereinafter designated as the
Investment Company), filed an intervening petition,
alleging the passage of said ordinance; the making and
confirmation of the assessment; the division of said
assessment into ten installments, in accordance with
said ordinance and the statute in such case provided,
the amount of the first installment being $4,295.26 and
each succeeding installment $4,200; the issuance of
bonds therefor and the making of the contract by said
city with said Frye as alleged in the original bill; that
by the contract between said city and Frye, it was
provided that from time to time, as the work pro-
gressed, upon certificate of the city engineer as to the
amount of material furnished and labor performed
said Board of Local Improvements would make pay-
ments, either in money, vouchers or bonds, in the man-
ner provided by law, to apply on said contract price;
provided, however, that the city should at all times
retain a sufficient amount upon each of said payments,
not to exceed ten per cent of the amount certified, to
properly secure the faithful performance of the con-
tract, until such time as said improvement should be
fully completed and accepted by said Board of Local
Improvements, and further, that an estimate should be
made at least once in each month, of all material upon
the ground and work performed, and that said Board
of Local Improvements would issue vouchers or bonds
or pay money upon said estimate.

The said petition further alleged that said Frye
entered upon the performance of the said work under
said contract, and from time to time, as the work on
the improvement progressed, the city, upon certificate
of the city engineer, made payments to said contractor
or his assignee pursuant to the terms of said contract,
in bonds, issued against the second and succeeding in-
stallments of said assessment, said bonds bearing date
November 1, 1906, in the denomination of $500 each,

with interest at five per cent per annum, evidenced by attached coupons, payable to bearer at the office of the city treasurer, out of the respective installments against which they were drawn, and payable only from the said installments when collected. That long prior to the commencement of the suit at bar the petitioner became the owner and holder, by purchase for a valuable consideration, of certain of said bonds and interest coupons described as Series "A," numbered 1 to 7 second installment, maturing August 2, 1908. That at the time said city issued and delivered said bonds to the said contractor or his assigns, neither the complainants in the original bill, nor the Newman Akron Cement Company, had served on the officials of the city a written notice of their respective claims; that defendant Lane was by the city council of the city of Hillsboro, appointed and had qualified as special collector of said special assessment; that the clerk of the county court of Montgomery county had certified the assessment roll and judgment to the said Lane as such collector, together with his warrant for the collection thereof; that said collector had collected the amount of the second installment, together with accrued interest on all of the deferred installments and various amounts on the third and succeeding installments, which amount was sufficient to pay the said seven bonds of Series "A" then past due, and the interest due on all of the bonds, but that the city had refused to pay the same. That petitioner was entitled to have the same paid out of the moneys so collected free of any lien of complainants or the Cement Company.

The petition, to which the complainants and defendants to the original bill, the Cement Company and the city treasurer, are made parties defendant, prays that an account may be taken of the amount collected from said assessment and the respective installments thereof, and that the court ascertain the amount due said

446    APPELLATE COURTS OF ILLINOIS.

Terre Haute Etc. Co. v. The M. Co. L. & T. Co., 163 Ill. App. 441.

intervening petitioner on said bonds and coupons, and decree payment of the same. The Trust Company by its answer denied that there had been no lawful issue and delivery of bonds, vouchers and warrants to Frye, and alleged that the same were all delivered prior to the service of any notice upon the officials of the city. The answer of the city and the board of local improvements to the intervening petition of the Investment Company, admitted substantially all of the averments thereof, but denied that a request was made for payment of the bonds before the petition was filed, and averred that the only reason they were not paid when due was the fact that suit had been brought by the lienors.

On November 28, 1908, the Trust Company filed its cross-bill, alleging that upon the certificate of the city engineer, the city issued to Frye vouchers for the sum of $34,994.03, and city warrants for $8,100 and on December 9, 1907, issued an additional voucher to Frye for $8,619.85, in payment for work done, which vouchers Frye assigned to the complainants; that the notices were not served for nearly thirty days after the issue, delivery and assignment of the voucher of December 9, 1907; that the board of Local Improvements issued and delivered to Frye, in lieu of said vouchers, bonds amounting to $33,500; that the holders of said bonds were before the court, and that the said bonds and vouchers were legal and binding on the city and liens upon the property specially assessed and should be discharged by the city without discrimination. Such cross-bill, as well as the answer of the Trust Company, admitted the validity of the bonds held by the Investment Company and its assignees.

The answer of the Investment Company to the cross-bill admitted that said city then had in its possession about $9,000 collected from the assessments levied for said improvement, but denied that any part of the same should be applied on the payment of the voucher

held by said cross-complainant, and averred that all of the money so collected and thereafter to be collected from said special assessment, should be applied to the payment of said bonds and interest coupons, and that no part thereof could lawfully be applied to the payment of the said voucher; denied that said voucher was a lien upon the property specially assessed or upon the moneys collected or to be collected from said assessment, and further denied that cross-complainant was entitled to have said voucher paid from the said assessment or any installment thereof, averring that even if the said voucher for the sum of $8,619.85, then held by the cross-complainant, was lawfully issued, the same did not amount to a payment by said city to Frye, or his order, on account of material furnished or work done on said local improvement, but was merely evidence that such work had been done and material furnished, and was to be exchanged for bonds thereafter to be issued; that the cross-complainant was not entitled to have the proceeds of said special assessment marshalled, as between said cross-complainant and the holders of said bonds, and paid to them *pro rata* in case the court should find that said lienors were entitled to a prior lien on said fund, or that said voucher was of the same legal force and dignity as the said bonds and coupons, or that the money collected or to be collected from the several installments of the said special assessment was a common fund for the payment of said voucher and bonds, but that such fund was legally applicable to the payment of the said bonds and coupons to the exclusion of said voucher.

The cause thereafter came on for hearing before the court upon exceptions to the report of the special master. The chancellor entered a decree finding that the complainants in the original bill and the intervening petitioner, Newman Akron Cement Company, were each entitled to a lien upon the money, bonds or warrants due or to become due from said city upon said

448     APPELLATE COURTS OF ILLINOIS.

Terre Haute Etc. Co. v. The M. Co. L. & T. Co., 163 Ill. App. 441.

contract with said Frye, or his assignee, to the amount of their aggregate claims, not exceeding the balance of the contract price; that so much of the money, bonds or warrants represented by and against which the so-called voucher issued to Frye on December 9, 1907, and by him assigned to the Trust Company, as was necessary to pay said lienors in full, should be subject to the payment thereof; and that said lienors and each of them, to the amount of their respective liens, were entitled to a lien against any money, bonds or warrants issued or to be issued, not therein specifically excepted, prior to any claim represented by said so-called voucher, and ordering that the city should, within thirty days, pay to the master in chancery the sum of $1,845, which had been deducted by said city as a time forfeit and for defective work, and that the same be distributed by said master among said lienors *pro rata;* that said city, within sixty days, issue local improvement bonds in anticipation of the collection of that part of the second and succeeding installments against which no bonds had been issued, and place the same in the hands of the master, who, after giving notice, should sell the same at public auction and divide the proceeds among the lienors, at par value, according to their respective liens; that if the amount realized from such sale was insufficient to satisfy said liens, said city should pay in money or issue warrants therefor in favor of the master for the balance of the assessment against the city and assessed against it as public benefit for said local improvement, and not theretofore by said city paid out, and place so much of said money or warrants as was not in excess of the amount due under said contract, in the hands of the master, to be by him distributed to the respective lienors as above stated; and that in the event that said liens were not thus satisfied in full, said city should cause a supplemental assessment to be spread upon the property originally assessed, and issue

bonds therefor, in a sufficient amount to pay any such deficiency, not exceeding the balance due on the contract price, and in an amount sufficient to fully satisfy any such deficiency; and that the same disposition thereof be made as of the bonds issued or to be issued under the original assessment; that the Investment Company or its assigns be held to be the lawful holders of the bonds delivered to it prior to the serving of notice of claims for a lien by said lienors, of the par value of $33,500; that said Trust Company be declared to be the holder of the two bonds of the par value of $1,000 delivered to it by the city prior to service of notice of claims for a lien by the respective lienors herein, and that said Investment Company and said Trust Company each be declared to be the respective holders of said amounts of said bonds free of the lien of said lienors.

The evidence shows the passage and approval of the ordinance and the making of the contract by the city and Frye, as alleged in the bill; that Frye entered upon the performance of said contract, and from time to time as the work progressed, upon estimates and certificates of the city engineer of the amount of material furnished and labor performed, vouchers were issued and delivered to Frye or his assignee, the Trust Company, which were afterward taken up by the city and bonds issued and delivered to Frye or his said assignee in lieu thereof, and payments made to Frye in bonds upon estimates and certificates of the city engineer upon the dates and for the total sum of $8,619.85; that at the time the bonds were issued and delivered, Frye executed and delivered to the city his receipts in full payment of the contract to the amount represented by the face value of the bonds and accrued interest. The evidence further shows that the Trust Company advanced money to Frye as the work progressed, to secure which Frye gave to one Barringer, its cashier, a power of attorney dated October 27, 1906, whereby

450    APPELLATE COURTS OF ILLINOIS.

Terre Haute Etc. Co. v. The M. Co. L. & T. Co., 163 Ill. App. 441.

he assigned to Barringer all moneys, bonds, vouchers and warrants due or to become due on said contract, and authorized Barringer to receive and receipt for the same to said city; that by virtue of said power of attorney, all moneys, vouchers, bonds and warrants issued by the city in payment for work done on the contract were delivered to Barringer for the Trust Company, and the receipt of Frye taken for the same, and that the amounts so received were credited on the indebtedness of Frye to the bank. The bonds so issued and received by the bank, to the amount of $33,500, were sold and delivered by it to the intervenor, the Investment Company, and the proceeds credited to Frye's account with the bank, several months before notices of liens were served by the lienors on the city officials of the city.

The assessment was confirmed by the county court of Montgomery county, August 18, 1906, and a warrant for the collection of the same was issued by the county clerk to Lane, collector of special assessments, whose testimony shows that all of the first and second installments were paid by the property owners; that the amount collected from each of the second and succeeding installments, including the amount paid over by him to the city treasurer, was as follows: Second, $4,380.41; third, $4,493.43; on the fourth, fifth, sixth. seventh, eighth, ninth and tenth installments, $844.06 each. The amount thus collected from the several installments was more than sufficient to pay the bonds held by the intervening petitioner, the Investment Company, maturing August 2, 1908, payable out of the second installment, and the interest coupons held by said company against the second and subsequent installments. Upon the final settlement between Frye and the Board of Local Improvements upon December 9, 1907, it was agreed that the sum of $42,294.03, had been paid to Frye and that a balance of $10,464.85 was still due. From such balance the Board retained $865, to correct

defective work, and $980 as a time forfeit, and the voucher for the balance of $8,619.85 was issued and assigned to the Trust Company as aforesaid. It does not appear that the Board of Local Improvements ever certified to the county court whether or not the improvements conformed substantially to the requirements of the original ordinance, pursuant to section 84 of the Local Improvement Act. Rev. Stat. (1909) 476.

It is first urged that the court erred in dismissing the cross bill of the Montgomery County Loan & Trust Co. Whether or not such error is well assigned depends upon the question of priority between the Loan Company and the Investment Company. The evidence fully establishes the validity of the bonds held by the Investment Co. and its assigns. We are of opinion that the finding of the court that said bonds are free of any lien, was fully right under the law and evidence. It is apparent from sections 42, 87, 88, 90 and 91, that vouchers shall be issued only against the first installment provided for in the Local Improvements Act, and then only when payments on the contract fall due and the first installment has not been collected. National Bank v. City of Elgin, 136 Ill. App. 453. The so-called voucher of December 9, 1907, is not drawn against any installment of the special assessment, and by its terms is to be paid in bonds to be thereafter issued. This conclusively shows that it was not intended that it should be paid from the first installment, because the bonds can only be issued against the second and succeeding installments, the first installments being payable in cash. While bonds when issued and delivered to the contractor, or his order, constitute a payment on the contract by the express provisions of the act, it is manifest the voucher in question, being neither a bond nor a voucher drawn against and payable out of the first installment of the assessment, cannot be treated as a payment. It follows that such voucher constituted no

452    Appellate Courts of Illinois.

Terre Haute Etc. Co. v. The M. Co. L. & T. Co., 163 Ill. App. 441.

claim or lien upon any part of the second or succeeding installments of the assessment, and that in order to become so it was essential that it be exchanged for bonds as provided by its terms. The contention of appellants that the delivery and acceptance of such voucher constituted an accord and satisfaction, is untenable, inasmuch as there was no substantial dispute or disagreement as to the amount due to Frye. The effect of the same at most amounted to but an acknowledgement of an existing condition of liability or stated account to be thereafter liquidated by the delivery of bonds as therein provided. The delivery of the voucher cannot be said to have been a payment of either property or negotiable paper or securities whereby if received as full satisfaction of the demand, it should be treated as a payment in cash, as is held in Ralston v. Wood, 15 Ill. 159, it being well-settled that such an instrument as is here involved would not operate as a payment against lienors. Spaulding v. Brown, 171 Ill. 487; Nat. City Bank v. City, 136 Ill. 487. The so-called voucher is clearly neither property, negotiable paper nor securities.

It is also insisted that the provision of the decree that the city should issue and deliver to the master in chancery, bonds against the second and succeeding installments, to be by him sold at public sale to the highest bidder, and the proceeds divided among the lienors, is erroneous, for the reason that the statute provides that bonds shall not be sold for less than par value, and that inasmuch as the contractor had agreed to and was compelled to take them at par, the lienors must stand in his shoes and also accept them at that price. Such provision of the decree can in no way prejudice the rights of the city,—the only one that can complain of the error, if any was committed. Any loss by reason of the sale of the bonds for less than par would manifestly fall upon the lienors, and they have it in their power to protect themselves by bidding at the public

THIRD DISTRICT—OCTOBER, 1911.        453

Terre Haute Etc. Co. v. The M. Co. L. & T. Co., 163 Ill. App. 441.

sale. The lienors, however, are not complaining, and the city cannot.

The decree further provides that the amounts retained from the contract price for defective work and as damages for failure to complete the work within the stipulated time, should be paid by the city to the master to be distributed among the lienors. It appears that the sum of $7,000 of the cost of the improvement was assessed against the city as public benefit, and that the same had been levied generally. We see no injustice in directing the amounts so deducted and retained, to be paid by the city, in cash or bonds, at its election. We are of opinion that as against the lienors, neither the Board of Local Improvements nor the city had the legal right to arbitrarily deduct said amounts from the contract price, and thus prejudice the rights of the parties interested. Upon the failure of the contractor to complete the work within the time mentioned in the contract, it was the duty of the Board of Public Improvements, under section 84 of the Local Improvements Act, to re-let the unfinished portion of the work. In case any loss was occasioned thereby it was the duty of the city to seek reimbursement by resorting to the bond of indemnity, which the proof shows had been given by the contractor, as provided by said section, to insure the prompt and faithful performance by him of the contract, instead of depleting the fund to the prejudice of the lienors. The presumption may properly be indulged that had the city proceeded according to the statute, it would have benefited all concerned. The action of the city in so adjusting the claim for damages resulting from the violation of the contract by the contractors, was therefore illegal, and it was but equitable to require it to account to the lienors for the amount of such deduction.

The foregoing views will dispose of the leading questions involved. A number of errors are assigned but not argued, and are therefore waived. We have con-

sidered those argued and deem them to be without merit.

The decree of the circuit court is affirmed.

*Affirmed.*