NORTHWEST WATER COMMISSION *et al.*, Plaintiffs-Appellants, v. CARLO V. SANTUCCI, INC., Defendant (National Ben-Franklin Insurance Company, Defendant-Appellee; Price Brothers Company *et al.*, Plaintiffs-Appellees).

First District (2nd Division) No. 85—1894

Opinion filed September 29, 1987.—Rehearing denied December 15, 1987.

Burke, Bosselman & Weaver, of Chicago (Edward F. Ryan and Mark A. Stang, of counsel), for appellant.

Phelan, Pope & John, Ltd., of Chicago (Robert J. Bates, Jr., of counsel), for appellee Price Brothers Company.

Chadwell & Kayser, Ltd., of Chicago (Paul W. Gabler, of counsel), for appellee Armco, Inc.

O'Brian, O'Rourke, Hogan & McNulty and Peterson, Ross, Schloerb & Seidel, both of Chicago (Donald V. O'Brien, Anne E. Schless, Vincent P. Reilly, and Steven P. Mandell, of counsel), for appellee National Ben-Franklin Insurance Company.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

The Northwest Water Commission (the Commission), a municipal corporation, was created in 1979 pursuant to the Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 11—135—1 *et seq.*), for the purpose of constructing a water pipeline from Lake Michigan to its member communities of Arlington Heights, Buffalo Grove, Palatine, and Wheeling. On March 17, 1983, the Commission contracted with Carlo V. Santucci, Inc. (Santucci), a party to each of the consolidated actions below but not to this appeal, to provide underground excavation for certain sections of the pipeline. Ben Franklin Insurance Company (Ben Franklin) was Santucci's surety, and posted a "payment bond" and a "performance bond," each in the amount of $3,883,332.05. Santucci subsequently subcontracted separately with Price Brothers Company (Price) and Armco, Inc. (Armco), whereby Price agreed to provide prestressed concrete pipe and other necessary materials, and Armco promised to furnish labor and materials for the installation of tunnels.

This appeal involves section 23 of the Mechanics' Liens Act (Ill. Rev. Stat. 1983, ch. 82, par. 23) (hereinafter referred to as section 23), which allows subcontractors of a general contractor employed by a public body to establish a lien on funds in the possession of the public body. According to such statute:

> "Any person who shall furnish material *** or labor to any contractor having a contract for public improvement for any *** municipal corporation in this State, shall have a lien for the value thereof on the money *** due or to become due the contractor ***." (Ill. Rev. Stat. 1983, ch. 82, par. 23.)

Hence, as subcontractors of a contractor employed by a public body, Price and Armco are permitted a lien on funds "due or to become due" Santucci. In order to perfect such a lien, however, section 23 requires that a subcontractor,

> "before payment or delivery thereof is made to such contractor, notify the official or officials of the *** municipal corporation whose duty it is to pay such contractor of his claim by a written notice and furnish a copy of said notice at once to said contractor." (Ill. Rev. Stat. 1983, ch. 82, par. 23.)

On February 2, 1984, after not being paid by Santucci, Price filed with the Commission by certified mail a notice of lien against funds "due or to become due" Santucci from the Commission, and Armco filed a similar notice on March 12, 1984.

After receiving these initial notices, the Commission began to withhold payment to Santucci as mandated by section 23, which states:

> "It shall be the duty of any such official upon the receipt of the first notice herein provided for to withhold a sufficient amount to pay such claim for the period limited for the filing of [such claim]." (Ill. Rev. Stat. 1983, ch. 82, par. 23.)

Between February 8, 1984, and May 2, 1984, pursuant to the statute, the Commission withheld payment on Santucci pay requests number 9 in the amount of $359,812.79, number 10 in the amount of $244,824.53, number 11 in the amount of $63,296.93, and number 12 in the amount of $2,359.40, for a total of $570,293.65. In accordance with its contract with Santucci, the Commission also withheld an additional $194,907.07, which represented "retainage," or money reserved by the Commission at the rate of 10% of each payment to insure completion of the project as per such contract. Thus, Santucci had completed $765,200.72 worth of construction for which it had not been compensated as of the time periods covered by the pay requests noted above.

In order to perfect their lien claims, section 23 required Price and Armco to

"within 90 days after giving such notice, commence proceedings by complaint for an accounting, making the contractor having a contract with the *** [municipal corporation] and the contractor to whom such material, apparatus, fixtures, machinery or labor was furnished, parties defendant, and shall within the same period notify the official or officials of the *** municipal corporation of the commencement of such suit by delivering to him or them a copy of the complaint filed. Failure to commence proceedings within 90 days *** shall terminate the lien ***." (Ill. Rev. Stat. 1983, ch. 82, par. 23.)

On April 27, 1984, within the 90-day period, Price filed a five-count "Complaint For Accounting And Other Relief," entitling its complaint "PRICE BROTHERS COMPANY, a Foreign Corporation, and NORTHWEST WATER COMMISSION, *ex rel.* PRICE BROTHERS COMPANY, Plaintiffs, v. CARLO V. SANTUCCI, INC., An Illinois Corporation, and NATIONAL BEN-FRANKLIN INSURANCE COMPANY OF ILLINOIS, an Illinois Corporation, Defendants." As illustrated, Price's designation of the parties did not specify that the Commission was a party defendant, although Price did name the Commission as an *"ex rel."* plaintiff and did pray "that PRICE be declared to have a lien on the public funds due or to become due to SANTUCCI in connection with the [pipeline project] in the total amount of $520,555.40." On June 5, 1984, Armco also filed suit within the 90-day period to perfect its lien, but, in contrast to Price, Armco specifically designated the Commission as an adverse party in the caption of its complaint. Armco prayed that it too "be decreed to have a lien [on public funds due or to become due Santucci] in the amount so found to be due Armco." In both instances, copies of the complaints were properly delivered to the Commission.

As noted earlier, upon receipt of the statutory first notice from the subcontractors the Commission was obliged to "withhold a sufficient amount to pay such claim for the [90-day] period limited for the filing of [such claim]." (Ill. Rev. Stat. 1983, ch. 82, par. 23.) Section 23 further states:

"Upon the expiration of this [90-day] period the money *** so withheld shall be released for payment to the contractor unless the person claiming the lien shall have instituted proceedings and delivered to the official of the *** municipal corporation a copy of the complaint as herein provided, in which case, the amount claimed shall be withheld until the final adjudication of

the suit is had." (Ill. Rev. Stat. 1983, ch. 82, par. 23.)

There is no dispute that Price and Armco timely instituted proceedings (the above-mentioned complaints for accounting), that the Commission was properly notified of the complaints within the 90-day period, and that the Commission did not release the withheld funds to Santucci as payment. Thus, under the terms of section 23, the Commission was obligated to retain the $570,293.53 until the "final adjudication" of Price's and Armco's suits.

On June 18, 1984, the Commission terminated Santucci as the general contractor charging breach of contract, and thereafter undertook to complete the project itself without affording Ben Franklin, Santucci's surety, the opportunity to finish the job. The Commission paid $270,050 to the J. R. Myers Company and $64,696 to the City of Evanston, and apparently also used some of the funds withheld under the statute, to complete construction of the project.

The Commission subsequently brought suit against Santucci, seeking a declaration that its termination of Santucci was proper and praying that judgment be entered against Santucci in the amount of the Commission's damages, plus interest, costs, and attorney fees. Though the complaint did not request a specific dollar figure as damages, in its briefs to this court the Commission asserts it has incurred damages totalling $414,897 as a result of Santucci's defective work and the excess engineering needed to correct such defective work, as well as due to the cost of completing the project.

On September 11, 1984, the Commission filed what it styled an "Emergency Motion *** To Consolidate Cases," seeking to combine its action against Santucci with Price's suit for an accounting "for purposes of discovery and trial." According to the Commission's motion, "[t]he consolidation of these actions would eliminate a multiplicity of suits, prevent unnecessary litigation, and avoid duplication of efforts and expense, thereby conserving the court's time and expediting the disposition of the actions." The trial court granted the motion for consolidation, explicitly ordering that the cases were "consolidated for the purposes of discovery and trial."

After the consolidation of the Price suit with the Commission's action, but prior to the time that the Armco suit was consolidated therewith, Price brought a motion on February 13, 1985, to compel the Commission to "immediately release to Price $406,000 plus interest which [the Commission] has held for the benefit of Price pursuant to notices of lien filed by Price on public funds held by the Commission which were otherwise due and owing *** Santucci." In its motion to compel, Price alleged that it had negotiated a settlement

agreement with Santucci whereby the latter stipulated that it was indebted to Price in the amount of $406,000 for pipeline materials furnished under the contract. Price requested that the trial court order the Commission to turn over to it $406,000 and provide an accounting for all interest earned on the monies withheld.

On March 4, 1985, the Commission filed a "Special and Limited Appearance" before responding to the motion to compel, moving to quash Price's motion for lack of personal jurisdiction. In its motion to quash, the Commission asserted that it was not an adverse party to Price in any of the actions which had been consolidated for purposes of discovery and trial. Consequently, according to the Commission, "[h]aving never filed a complaint or counterclaim against [the Commission], Price does not have standing to bring a motion which seeks to compel personal relief from [the Commission]," and further, "Price's failure to file a complaint or counterclaim against [the Commission] means that the court lacks personal jurisdiction over [the Commission] to decide Price's motion ***."

In addition to the motion to quash for lack of personal jurisdiction, on March 8, 1985, the Commission filed a brief in opposition to Price's motion to compel, wherein it specifically stated that "[w]ithout waiver of or prejudice to its motion to quash the motion of Price *** for lack of jurisdiction, the Commission, responds to the motion for release of lien funds." The Commission proceeded to assert that Price must try to recover from the surety Ben Franklin, and that it possessed no money due or to become due to Santucci. Without addressing the jurisdictional issue raised by the Commission, the trial court subsequently entered an order on Price's motion for release of lien funds which directed the Commission to provide the court an accounting of the funds withheld from Santucci, including interest, since January 1984. The court also set Price's motion for a hearing on March 28.

In compliance with the court's order, the Commission on March 26 filed an accounting indicating the maximum contract price, disbursements, claims and interest related to the pipeline project. Simultaneously with the filing of the accounting, the Commission also filed two other motions. First, the Commission requested that the court compel Ben Franklin, Santucci's surety, to comply with discovery by producing certain documents requested through discovery and to answer certain written interrogatories. Secondly, the Commission filed a motion to "compel *** Ben Franklin to honor its Payment Bond," arguing that it was Ben Franklin's duty as Santucci's surety to satisfy Price's lien claim. The record discloses that the trial court entered an order

setting April 4 as the date it would rule on Price's motion as well as on the two pending motions filed by the Commission on March 26.

Prior to the hearing docketed for April 4, the Commission filed a supplemental response to Price's motion to compel the release of lien funds, wherein it asserted that Price misread certain authority pertaining to the issues at hand, and that Price could not recover amounts from the Commission which the Commission asserted it did not owe the general contractor, Santucci. The Commission failed to raise the alleged defect in personal jurisdiction at any point in this supplemental response.

Nor did the Commission raise the jurisdictional question when the trial court heard argument on the various pending motions on April 4. Instead, counsel for the Commission appeared and argued the merits of Price's motion to compel the release of lien funds, as well as those of its two motions to compel Ben Franklin to comply with discovery and to pay Price's lien claim. The trial court subsequently entered two orders adverse to the Commission. It first directed that "upon the release of a lien by Price *** [the] Commission shall pay over to Price *** the principal sum of $400,000 plus interest at the rate of 5% from February 1984, the date Price *** filed its notice of lien." Furthermore, "Ben Franklin *** shall furnish *** [the] Commission with a bond which indemnifies and holds harmless the *** Commission for payment of the principal and interest amount to Price pursuant to this order in the event this order is held to be in error." The second order denied the Commission's motion to compel Ben Franklin to satisfy Price's lien claim out of Ben Franklin's payment bond. Price made an oral motion to amend the first of these orders concerning the release by the Commission of lien funds, though it is unclear from the record when this motion was made or for what reason Price was dissatisfied with the court's directive.

Shortly thereafter, Santucci petitioned the court to order the Commission to deposit the amount of money withheld from Santucci in a court-appointed depository. The Commission filed a response to Santucci's petition, and asserted in a footnote that by so responding it did not intend to waive the jurisdictional question. The trial court continued Santucci's motion, as well as Price's oral motion to amend, until April 24, and the court took both motions under advisement.

On April 30, prior to a determination of Price's and Santucci's motions, Armco filed a motion for summary judgment on its complaint for accounting, alleging that there was no genuine issue as to any material fact and that Armco was entitled to judgment as a matter of law. At this time, however, the trial court consolidated Armco's

case with the two actions which had already been consolidated, namely Price's suit for accounting and the Commission's action against Santucci. Armco's motion for summary judgment was subsequently considered by the trial court on May 17 simultaneously with Santucci's motion to compel the Commission to release the withheld lien funds to a depository designated by the court, and Price's oral motion to modify the April 4 order.

After a brief discussion, the trial court found that although the April 4 order was proper in its result, it was not proper in form. Accordingly, the judge directed counsel for Price and Armco to draft a new order reaching substantively the same outcome. At this point, counsel for Santucci raised the jurisdictional question, requesting that the court's order include a denial of the Commission's earlier motion to quash Price's motion to compel for lack of personal jurisdiction. Only after Santucci raised the jurisdictional issue did counsel for the Commission assert that it had not waived any alleged jurisdictional defects. The court subsequently asked appellee's counsel to include in the draft order a provision denying the Commission's motion to quash for lack of personal jurisdiction.

On May 21, 1985, the court entered the order appealed from herein. It first denied the Commission's motion to quash for lack of personal jurisdiction, as well as its motion to compel Ben Franklin to satisfy Price's lien claim. The court then considered Price's motion to have the Commission pay its lien claims, and found that Price had a valid claim for a lien against public funds, accordingly ruling that the Commission

> "is ordered to pay Price Brothers Company the sum of $400,000 plus $21,315.07 in statutory interest since April 27, 1984. Judgment is hereby entered in favor of Price Brothers Company and against the [Commission] in the amount of $421,315.07."

The trial court also determined that Armco had a valid claim for a lien against public funds, and therefore decreed that the Commission

> "is ordered to pay Armco, Inc., the sum of $178,755 plus $8568 in statutory interest since June 5, 1984. Judgment is hereby entered in favor of Armco, Inc., and against the [Commission] in the amount of $187,323."

On appeal, the Commission presents the following issues for our review: (1) whether the trial court erred in denying the Commission's motion to quash Price's motion to compel the Commission to release lien funds due to lack of personal jurisdiction over the Commission; (2) whether the trial court erred in ordering the Commission to satisfy

Price's and Armco's lien claims; (3) whether the trial court erred in ordering the Commission to pay prejudgment interest on the amounts awarded Price and Armco; and (4) whether the trial court erred in refusing to require Ben Franklin to satisfy the lien claims on the Commission's behalf. We affirm.

As noted earlier, in response to Price's motion to compel the release of lien funds, the Commission argued that the trial court lacked personal jurisdiction over the Commission to grant the relief sought by Price, and therefore it should have quashed Price's motion. In support of this argument, the Commission emphasizes that "a court acquires jurisdiction over a person only after a proper service of summons." (*In re A.M.* (1984), 128 Ill. App. 3d 100, 103, 470 N.E.2d 58.) Indeed, the record indicates that Price, as claimed by the Commission, never served the Commission with a summons, nor did it file a counterclaim against it, in any of the three consolidated actions which form this appeal. However, Price, Armco, and Ben Franklin in their briefs to this court assert four grounds in favor of the trial court's jurisdiction: (1) Price's full compliance with section 23 necessarily resulted in the court's gaining jurisdiction over the Commission; (2) through consolidation of the actions for joint trial, the litigation was merged into a single cause rendering the parties interchangeable; (3) the Commission effectively waived any lack of personal jurisdiction by pleading responsively to Price's motion to compel, and by making general appearances before the court on several occasions both in the initial action filed by Price and in the consolidated case; and (4) the designation of the Commission as a party *"ex rel."* is the traditional manner in which a public body is brought before the court.

Numerous cases have considered the question of whether proper notice to the public body under section 23 is a prerequisite to the trial court's exercise of jurisdiction over an action based on the subcontractors' complaint for accounting. (*People ex. rel Anderson v. Village of Bradley* (1937), 367 Ill. 301, 11 N.E.2d 415; *Davinroy Plumbing & Heating v. Finis P. Ernest, Inc.* (1980), 87 Ill. App. 3d 1047, 409 N.E.2d 372; *Hill Behan Lumber Co. v. Marchese* (1971), 1 Ill. App. 3d 789, 275 N.E.2d 451; *Chicago Wood Piling Co. v. Anderson* (1942), 313 Ill. App. 242, 39 N.E.2d 702.) However, the Commission does not dispute that Price complied strictly with all of the notice requirements delineated in the statute. In contrast, this case presents a unique, and apparently heretofore unlitigated, question: whether a subcontractor's compliance with the notice requirements of section 23 automatically empowers the circuit court to adjudicate a subcontractor's motion to compel the public body to release withheld lien funds.

■ Section 23 does not require that the public body be made a party defendant in the subcontractor's complaint for accounting, but rather, as mentioned earlier, it directs only that the subcontractor make "the contractor having a contract with the *** municipal corporation and the contractor to whom such material *** or labor was furnished, parties defendant." (Ill. Rev. Stat. 1983, ch. 82, par. 23.) There is also nothing in section 23 which indicates that a separate action against the public body is necessary in order to compel a turnover of the withheld funds. According to the statute, Price's only duty with regard to the Commission is to "notify the official or officials of the *** municipal corporation of the commencement of [the complaint for accounting] by delivering to him or them a copy of the complaint filed." (Ill. Rev. Stat. 1983, ch. 82, par. 23.) Once properly notified by delivery of a copy of the complaint, "the amount claimed [by the subcontractor] shall be withheld [by the public body] until the final adjudication of the suit is had." Ill. Rev. Stat. 1983, ch. 83, par. 23.

The appellees contend that the Commission, while not a party defendant, is by statute a stakeholder in Price's suit for an accounting and therefore is subject to a motion to compel filed by a subcontractor. According to the appellees, "[b]y filing its complaint to enforce its lien claim, Price availed itself of the exclusive statutory remedy against the [Commission], the owner of the project," and therefore the Commission "by statute became a party to this lawsuit, and the trial court correctly had jurisdiction over [it]." Hence, the argument runs, "[j]urisdiction over the public body is automatically established through the complaint for accounting filed by the lien claimant."

In *dicta*, however, this court has indicated that the public body is not automatically a party to a subcontractor's complaint for accounting. *Davinroy Plumbing & Heating v. Finis P. Ernest, Inc.* (1980), 87 Ill. App. 3d 1047, 409 N.E.2d 372.) The facts in *Davinroy* were as follows: Ernest was a general contractor on a public works project owned by the St. Clair Housing Authority, and Davinroy was employed by Ernest as a subcontractor. Davinroy filed a notice of lien with the St. Clair recorder of deeds, an improper party for service of notice under section 23 which, as noted earlier, requires that notice be delivered to "the official or officials *** whose duty it is to pay such contractor." (Ill. Rev. Stat. 1983, ch. 82, par. 23.) Davinroy subsequently filed a complaint for an accounting against Ernest, but failed to make the Housing Authority a party. The trial court entered judgment in favor of Davinroy against Ernest, from which Ernest appealed, contending, among other things, that Davinroy did not properly perfect a lien under section 23, citing the defective notice. The

Appellate Court for the Fifth District agreed that Davinroy "was not in compliance with the procedural aspects of section 23 because he failed to give the prescribed notice of lien [to the Housing Authority] and because the suit for accounting was neither timely filed nor properly served." *Davinroy Plumbing & Heating v. Finis P. Ernest, Inc.* (1980), 87 Ill. App. 3d 1047, 1052, 409 N.E.2d 372.

The court then considered whether the Housing Authority was the only party which could object on the basis of the insufficiency of the notice, but the court avoided the issue by holding that Ernest could properly avail itself of the defense of Davinroy's failure to file suit for an accounting within the time prescribed by statute. In sidestepping the question, however, the court stated:

> "[T]he Housing Authority has never been made a party to these proceedings. To attempt to assess its attitude as if it were a party would be to indulge in impermissible speculation." (87 Ill. App. 3d 1047, 1052, 409 N.E.2d 372.)

Accordingly, we view *Davinroy* as containing respectable *dicta* indicating that a public body is not automatically made a formal party to a subcontractor's suit for an accounting solely by reason of the subcontractor's compliance with section 23.

However, even if the public body is not made a formal party in the complaint for an accounting, it is reasonable for one to arrive at the conclusion that the circuit court nevertheless has the necessary power, authority, and jurisdiction to order the public agency, whether or not it is a party defendant, to turn over all or any part of the withheld funds to the appropriate party and the municipality would be duty bound to comply. Section 23 requires the municipal corporation, once the suit for accounting is filed to perfect a lien, to withhold "the amount claimed *** until final adjudication of the suit is had." We can fathom no reason for this requirement other than that the withheld monies can be held to belong in whole or in part to others. Certainly the public entity will have had statutory notice before such a suit could be validly filed, and most assuredly, having had a copy of the complaint delivered to it as per statute, if it deemed the suit to be ill-founded, it would have every right to intervene as an interested party in order to deny the claim or to assert any other defense available to it to protect its interest so that the court could make a proper adjudication affecting and binding upon all of the interested parties.

Judicial economy would seem to us to be in and of itself sufficient reason to obviate the necessity of having a prevailing subcontractor in the accounting action file a new and separate action to enforce collection of the monies withheld, for at bottom, what other purpose would

an adjudication in the suit for an accounting serve? A right which is merely an abstract one would appear to us to be as futile as a damp match.

The intent of the legislature in enacting the section 23 appears clearly and unmistakably to be that of satisfying the claimant's lien— no mere abstraction. As clearly disclosed by the rigors imposed by the statute, the legislature intended to present the court with a justiciable case or controversy resulting in an adjudication for a definite purpose. The purely fortuitous circumstance that the General Assembly has not in so many words provided for the disbursement of the funds after the accounting suit has been adjudicated should provide no comfort to a party in the position of the Commission here, for, to carry the reasoning of the Commission to its logical conclusion, the suit for an accounting would result in nothing more than the court's rendering an advisory opinion—an absurd result, to be sure, and one certainly not within the contemplation of the General Assembly.

■■ ■ We do not rest our decision on that sole ground, however, for there are other forceful reasons provided in existing case law which justify the conclusion that the Commission is indeed subject to Price's motion to compel. For example, it is well settled that the sole remedy of a subcontractor such as Price against a public body in the Commission's position is pursuant to section 23. (*Bates & Rogers Construction Co. v. North Shore Sanitary District* (1980), 92 Ill. App. 3d 90, 93-94, 414 N.E.2d 1274; *Hill Behan Lumber Co. v. Marchese* (1971), 1 Ill. App. 3d 789, 792, 275 N.E.2d 451.) More important, in *Consolidated Construction Co. v. Malan Construction Corp.* (1963), 42 Ill. App. 2d 272, 192 N.E.2d 263, this court went as far as it could under the circumstances of that case to indicate that service of process and a formal complaint naming the public body as a party defendant would not be necessary in order for the subcontractors to recover from such an entity. In *Malan,* the court considered a challenge by a public agency (the city) to the right of a subcontractor to join it as an adverse party in the subcontractor's complaint for an accounting. In finding that a public body is a proper party to such an action, the court made the following observation:

"When [the subcontractor] filed its lien it took the first step to secure payment by the City of its claim against [the general contractor]. When its suit was filed in the Federal Court it took the second step. It could have taken the third by serving a copy of the complaint upon the City. If it had taken the latter step it would have done all that was required to have fully protected itself: the City would have been obligated to withhold the

amount claimed until the outcome of the case, and if it did not it would be liable for any wrongful payment \*\*\*. By starting a second case and including the City as a defendant, [the subcontractor] did what was *unnecessary* but not what was unauthorized. Section 23 gave the subcontractor access to the City's funds; the City has a continuing interest in the funds which have been liened and this interest will not end until the funds are distributed in accordance with the outcome of the litigation." (Emphasis added.) (42 Ill. App. 2d 272, 279, 192 N.E.2d 263.)

Thus, the court in *Milan* clearly depicts that the inclusion of the public body as a party defendant in a subcontractor's complaint for an accounting is not a necessary prerequisite to the trial court's power to adjudicate the subcontractor's rights *vis-a-vis* the public body. Therefore, the trial court herein properly held that it had jurisdiction to hear and determine Price's motion to compel.

■ In addition, unless the Commission is totally confused by its own inconsistent actions, there is every reason to believe that it has always viewed this consolidated case as a unitary proceeding, thus leading one ineluctably to the conclusion that, even if personal jurisdiction over the Commission was not established automatically upon compliance with section 23, jurisdiction was properly held by the trial court to obtain as a result of the consolidation of these various actions for purposes of trial. We note initially that courts in Illinois favor consolidation of appropriate causes in the interest of judicial economy (*J. F. Inc. v. Vicik* (1981), 99 Ill. App. 3d 815, 819, 426 N.E.2d 257), since such joinder promotes expedition in the trial of cases and in the conservation of time, and also allows the court and the litigants to avoid duplication of effort and unnecessary expense. (*Peck v. Peck* (1959), 16 Ill. 2d 268, 276, 157 N.E.2d 249.) The General Assembly has decreed that "actions pending in the same court may be consolidated, as an aid to convenience, whenever it can be done without prejudice to a substantial right." Ill. Rev. Stat. 1985, ch. 110, par. 2—1006.

■ Our supreme court has recognized three forms of consolidation: "(1) where several cases are pending involving substantially the same subject matter a method of avoiding the trial of each case separately is to stay the proceedings in all but one, the decision in the others to be settled by that reached in the one trial; (2) where several cases involve an inquiry into the same event in its general aspects, the cases may be tried together, but with separate docket entries, verdicts and judgments, the consolidation being limited to a joint trial; and (3) where several actions are pending which might have been

made the subject of a single proceeding, the cases, by consolidation, become merged into one in which the rights of the parties are determined." (*Black Hawk Motor Transit Co. v. Illinois Commerce Com.* (1943), 383 Ill. 57, 67, 48 N.E.2d 341.) The appellees argue that the circumstances *sub judice* indicate that the consolidation herein was of the type described in the third above-mentioned category, in which the cases are merged into one action which determines the rights of each of the parties in relation to each other.

■ It is clear that the causes of action herein were consolidated for a much broader reason than mere convenience, *i.e.*, for the purposes of discovery and trial. Such purposes indicate that the rights of all of the parties would be finally litigated and settled in one action. The appellees emphasize that in its motion to consolidate, the Commission itself stated that "consolidation would eliminate a multiplicity of suits, prevent unnecessary litigation, and avoid duplication of efforts and expense, thereby conserving the court's time and expediting the disposition of the actions." Therefore, according to the appellees, "[t]he very words of its motion imply that the [Commission] views all of the cases as interrelated and inseparable." Indeed, we fail to perceive how all of the goals urged by the Commission upon the trial court in its motion to consolidate could be attained unless the court had the power to decide Price's motion to compel. Given these circumstances, we believe it to have been proper for the trial court to have heard and ruled upon any motions between the parties which came before it in order to bring the litigation to a prompt and efficient resolution, and thus satisfy the promises held out by the Commission to the court with respect thereto.

In light of our holding that the determination of the circuit court with respect to its jurisdiction was proper for the reasons stated above, we consider it unnecessary to address the other contentions made by the appellees in this regard.

It is time now to turn to the question of whether the trial court erred in ordering the Commission to satisfy Price's and Armco's lien claims. As alluded to earlier, the relevant portion of section 23 provides as follows:

> "Any person who shall furnish material *** or labor to any contractor having a contract for public improvement for any *** municipal corporation in this State, shall have a lien for the value thereof on the money *** due or to become due the contractor ***." (Ill. Rev. Stat. 1983, ch. 82, par. 23.)

In light of the fact that Price and Armco complied with the Lien Act's requirements of notice and the filing of a complaint for an ac-

counting within 90 days, the critical issue becomes whether there was money "due or to become due" Santucci in the possession of the commission, and therefore subject to the lien claims of Price and Armco. At the heart of this dispute is the $570,293,65 involved in Santucci pay requests Nos. 9 through 12, which the Commission withheld from Santucci upon receipt of the notice of lien served upon it by Price in February 1984.

The Commission's reasoning that the $570,293.65 was not "due or to become due" Santucci can be summarized as follows. First, the Commission claims the right pursuant to its contract with Santucci to retain the withheld payments in order to recoup the $414,897 in damages which it alleges it incurred as a result of Santucci's default. Secondly, the Commission argues that its rights are superior to Price's and Armco's lien rights even as to the money which was allegedly due Santucci, relying heavily on *Gunther v. O'Brien Brothers Construction Co.* (1938), 369 Ill. 362, 16 N.E.2d 890. In addition to its *Gunther*-type claim, the Commission also asserts that it is entitled, as the project owner, to take the difference between the amount it owes Santucci and the amount the Commission had to expend in order to correct Santucci's deficiencies and to supply its omissions. The Commission next proposes that because Price's and Armco's lien rights are derivative of Santucci's rights to recover from the Commission, it was improper to enter judgment on those claims prior to a determination of the amount the Commission owed Santucci. Finally, the Commission contends that it took no action which induced the subcontractors to continue working, and therefore it should not be estopped from denying that the $570,293.65 was due Santucci. We believe that the appellees convincingly rebut each of these arguments.

The appellees first argue that the Commission's reliance on its contract with Santucci as giving it the right to withhold the funds for its own purposes is in error. While it is true that the contract gives the Commission the right to withhold payments to cover certain of its claims against Santucci, the Commission did not exercise this right with respect to any portion of the $570,293.65 at the time the subcontractors' liens attached. Rather, the Commission's chief executive officer recommended approval of pay requests Nos. 9 through 12 in their entirety, and the Commission doubtless would have paid the amounts indicated thereon but for the filing of the lien claims. Consequently, at the time the liens were perfected, the fact that the foregoing amount was due Santucci is indisputable.

In this regard, we consider the Commission's argument that

the pay requests were nothing more than "recommendations" of payment and accordingly there was nothing yet due Santucci to be nothing short of a textbook example of sheer sophistry contrived solely for appellate purposes. In its reply brief to this court, the Commission asserts that "only the full Commission *** could authorize disbursement of funds," and therefore there is no payment due Santucci. However, our review of the record discloses that the Commission failed to make this argument in the court below. The law is clear that "an issue not presented to or considered by the trial court may not be raised for the first time on appeal and that points argued on review must be commensurate with the issues presented below." (*Melvin v. City of West Frankfurt* (1981), 93 Ill. App. 3d 425, 433, 417 N.E.2d 260; see also *Webb v. Rock* (1980), 80 Ill. App. 3d 891, 896, 400 N.E.2d 959.) Accordingly, such failure forecloses us from addressing this contention.

■ Upon a finding of a valid and perfected lien, we believe the case law clearly compels the conclusion that moneys withheld pursuant to notice of such lien can be subject only to the subcontractor's lien claim, and hence cannot be sequestered by a public body for its own purposes. For example, in *People ex. rel. Anderson v. Village of Bradley* (1937), 367 Ill. 301, 11 N.E.2d 415, the subcontractor brought a separate action against the public body to compel it to turn over funds which the trial court determined were due the general contractor. Our supreme court stated:

> "The money collected by the village from the special assessment levied to pay the cost of the improvement constituted a trust fund available to those having legal claims for materials furnished, or labor performed, in the course of the construction of the sewer. The village could not lawfully appropriate any part of those funds to other corporate uses. The withdrawn funds are treated as still in the custody of the village for the purpose of paying the liability imposed by its contract for the improvement. To permit the village to say it no longer has the money, or is unable to pay, would be to place municipalities in a position to defeat the lawful claims of contractors who have, in good faith, fulfilled their undertakings for the construction of, or the furnishing of materials or labor for, local improvements. The law will not countenance the evasion by a village of its debt, by either its willful or negligent failure to apply towards the discharge of that obligation funds collected by it for the specific purpose of meeting such demand." (367 Ill. 301, 307, 11 N.E.2d 415.)

This court has accordingly held that a public body is "obligated to withhold the amount claimed until the outcome of the case, and if it did not it would be liable for any wrongful payment." *Consolidated Construction Co. v. Malan Construction Corp.* (1963), 42 Ill. App. 2d 272, 279, 192 N.E.2d 263.

Moreover, in *Terre Haute Vitrified Brick Co. v. Montgomery County Loan & Trust Co.* (1911), 163 Ill. App. 441, a public body used funds withheld from a general contractor, after timely filing of liens by various subcontractors, to correct defective work and to complete the project on schedule. In holding that the amount withheld was properly payable to the subcontractors, the court stated:

> "We are of [the] opinion that as against the lienors, neither the Board of Local Improvements nor the city had the legal right to arbitrarily deduct said amounts from the contract price, and thus prejudice the rights of the parties interested. Upon the failure of the contractor to complete the work within the time mentioned in the contract, it was the duty of the Board of Public Improvements *** to re-let the unfinished portion of the work. In case any loss was occasioned thereby it was the duty of the city to seek reimbursement by resorting to the bond of indemnity, which proof shows had been given by the contractor *** to insure the prompt and faithful performance by him of the contract, instead of depleting the fund to the prejudice of the lienors. *** The action of the city in so adjusting the claim for damages resulting from the violation of the contract by the contractors, was therefore illegal, and it was but equitable to require it to account to the lienors for the amount of such deduction." (163 Ill. App. 441, 453.)

Thus, case law plainly illustrates that the Commission was prohibited from using the withheld funds for any purpose other than to pay the subcontractors upon adjudication of their complaint for accounting.

As to the Commission's argument that its rights are superior to Price's and Armco's even as to the money due Santucci, the main case upon which the Commission relies, *Gunther v. O'Brien Brothers Construction Co.*, is clearly distinguishable from the case at hand. In *Gunther*, the Galesburg Sanitary District appealed to the supreme court a ruling that certain subcontractors were entitled to liens upon the full amount of the contract retainage, part of which the sanitary district had used to complete the project after the general contractor had defaulted. (*Gunther v. O'Brien Brothers Construction Co.* (1938), 369 Ill. 362, 364, 16 N.E.2d 890.) The public body argued that the subcontractor's lien does not attach to the full amount of the re-

tainage, but instead attaches only to the amount of retainage which remained after deducting the sanitary district's damages and costs of completion. The supreme court accepted this reasoning, stating:

> "Appellees perfected their liens when they complied with the statute, but that does not mean that they were entitled to a lien on money that was not due or to become due to [the general contractor]. By the terms of the contract the only money which finally became due was [that which] remained after the sanitary district had paid the expense occasioned by the contractor's default and the cost of completing the sewers \*\*\*." 369 Ill. 362, 371, 16 N.E.2d 890.

In view thereof, the supreme court found that upon a contractor's default prior to the completion of the work, a public body may use the retainage withheld to complete the improvement under a reletting to another contractor.

In contrast to the case at bar, at the time the contractor defaulted in *Gunther*, it had been paid for its work except for the retainage. However, the $570,293.65 amount at issue herein was not retainage but an amount already approved by the Commission for payment to Santucci. Unlike the present case, the public agency in *Gunther* did not hold back money on behalf of the lien claimants pursuant to the notices of lien and thereafter draw money from that fund in order to cover expenses resulting from the contractor's default. The *Gunther* reasoning is therefore not applicable here, at least with regard to the $570,293.65 comprehended in pay requests Nos. 9 through 12. *Gunther*, however, does state the controlling law with respect to the $194,907.72 retainage held by the Commission, a sum which it was indisputably allowed to spend to complete the project.

■ The other authorities cited by the Commission in support of its various arguments are similarly pallid. For example, the Commission puts particular stress upon the case of *Rittenhouse & Embree Co. v. Warren Construction Co.* (1914), 264 Ill. 619, 106 N.E. 466, wherein our supreme court stated that "the statute which gives a right to a mechanic's lien was not intended to abridge or curtail the right of contract between [the owner and the general contractor]." (264 Ill. 619, 624, 106 N.E. 466.) However, *Rittenhouse* involved application of section 21 of the Mechanics' Liens Act (Ill. Rev. Stat. 1913, ch. 82, pars. 19, 35, 46), which concerns liens between private parties, in contrast to section 23 (Ill. Rev. Stat. 1983, ch. 82, par. 23), which concerns liens against public funds. Besides, *Rittenhouse* involved a contractual clause which waived all rights to mechanics' liens and thus effectively prevented any claims from arising. (264 Ill. 619, 624, 106

N.E. 466.) No such clause exists in the contract between the Commission and Santucci. The Commission also fails to cite any authority for its argument that it is entitled to a credit as compensation for defective work, and that this "right of set-off" is superior to the statutory rights of the lien claimants. The three cases cited by the Commission (*Downes Swimming Pool, Inc. v. North Shore National Bank* (1984), 124 Ill. App. 3d 457, 464 N.E.2d 761; *Dean v. Rutherford* (1977), 49 Ill. App. 3d 768, 364 N.E.2d 625; *Watson Lumber Co. v. Guennewig* (1967), 79 Ill. App. 2d 377, 226 N.E.2d 270), besides being private sector cases, are irrelevant for the additional reason that they concern merely the right of an owner to a setoff against the amount owed a general contractor in a situation totally unlike that present in the case at bar.

The Commission cites the case of *Electric City Concrete Co. v. Phillips* (1984), 473 N.Y.S.2d 608, 100 A.D.3d 11, for the proposition that it was improper to enter judgment on the lien claims prior to a determination of the amount the Commission owed Santucci. In *Electric City*, the supreme court of New York, appellate division, held that where the subcontractor filed notices of mechanics' liens when it was unclear what amount, if any, the project owner owed to the general contractor, and the amount which was due and owing could only be determined after the owner and the contractor settled their dispute during trial, the trial court correctly ruled that satisfaction of the mechanics' lien could only come out of the settlement fund. In contrast, in the case at bar there was no dispute as to the amount of money that was approved but unpaid to Santucci after the notices of lien were received by the Commission, this sum being clearly delineated in pay requests Nos. 9 through 12.

▪▪▪ Turning now to the question of whether the trial court erred in ordering the Commission to pay prejudgment interest on the amounts awarded to Price and Armco, we find that the law is clear that a municipal corporation is not liable for interest on claims against it in the absence of an express agreement to pay interest, except where money is wrongfully obtained or illegally held by the municipality. (*Morgan v. City of Rockford* (1941), 375 Ill. 326, 328, 31 N.E.2d 596.) The Commission contends that the money in question was not wrongfully obtained or illegally held, but that it acted in good faith with regard thereto. However, the court in *Terre Haute* stated that "[t]he action of the city in so adjusting the claim for damages resulting from the violation of the contract by the contractor, was *** illegal, and it was but equitable to require it to account to the lienors for the amount of such deduction." (*Terre Haute Vitrified Brick Co.*

*v. Montgomery County Loan & Trust Co.* (1911), 163 Ill. App. 441, 453.) This well-reasoned holding constitutes ample precedent that the Commission's use of such funds to complete the project was indeed illegal, and that, therefore, the imposition of interest was justified.

■■ Further, the Commission acknowledged that it earned $47,628 in interest through March 31, 1985, on the funds withheld from Santucci. This amount is in excess of the total of $29,883.07 in interest that the trial court awarded to Price and Armco. Obviously then, the interest awarded to Price and Armco is not being paid by the Commission, but rather was generated from funds due Santucci and required to be withheld by the Commission. Our supreme court has held that when the amount due the original contractor from the public body is sufficient to pay interest to the subcontractor, it is proper for a court to award interest to the lien claimants, since in effect it is the original contractor and not the public body which is paying the interest. (*West Chicago Park Commissioners v. Western Granite Co.* (1902), 200 Ill. 527, 535, 66 N.E. 37.) In addition, there is appellate authority which holds that the trial court has discretion to award such interest. (*Fence Co. v. Scott-Ballantyne Co.* (1953), 349 Ill. App. 467, 473, 111 N.E.2d 190.) Therefore, we hold that it was proper for the trial court to award prejudgment interest in this case.

■■ ■ Finally, we address the question of whether the trial court erred in refusing to require Ben Franklin, Santucci's surety, to satisfy the lien claims on the Commission's behalf. As noted earlier, the Commission did not demand of Ben Franklin that it complete the project pursuant to its bond obligation, but instead it undertook to finish the project itself. Nevertheless, the Commission argues that the surety had a duty to the Commission to pay Price's and Armco's lien claims under "An Act in relation to *** contracts for public construction" (hereinafter referred to as the Contracts for Public Works Act) (Ill. Rev. Stat. 1983, ch. 29, par. 15 *et seq.*). According to section 1 of this Act:

> "All officials, boards, commissions or agents of this State, or of any political subdivision thereof in making contracts for public work of any kind to be performed for the State, or a political subdivision thereof shall require every contractor for such work to furnish, supply and deliver a bond to the State, or to the political subdivision thereof entering into such contract, as the case may be, with good and sufficient sureties. The amount of such bond shall be fixed by such officials, boards, commissions, commissioners or agents, and such bond, among other conditions, shall be conditioned for the completion of the con-

tract, for the payment of material used in such work and for all labor performed in such work, whether by subcontractor or otherwise." (Ill. Rev. Stat. 1983, ch. 29, par. 15.)

In the instant case, the requirement of a bond "conditioned for completion of the project" was met with two bonds, a "payment bond," and a "performance bond," each in the amount of $3,883,332.05, the former of which, according to the Commission, obliged Ben Franklin, Santucci's surety, to pay Santucci's subcontractors and suppliers.

Ben Franklin, however, contends that the Commission does not have standing to enforce the conditions of the bond. A subsequent portion of the Contracts for Public Works Act, hereinafter referred to as section 2, declares that:

> "Every person furnishing material or performing labor, either as an individual or as a sub-contractor for any contractor, with the State, or a political subdivision thereof where bond shall be executed as provided in this Act, shall have the right to sue on such bond in the name of the State, or the political subdivision thereof entering into such contract ***." (Ill. Rev. Stat. 1983, ch. 29, par. 16.)

This court has recently added that sections 1 and 2 "provide an alternative remedy to that afforded by the Lien Act [section 23] ***, their purpose being to protect contractors and materialmen for whom no right of mechanic's lien exists against the public body. (*City of Chicago ex rel. Charless Equipment Co. v. United States Fidelity & Guaranty Co.* (1986), 142 Ill. App. 3d 621, 626, 491 N.E.2d 1269.) Moreover, in *Housing Authority v. Holtzman* (1970), 120 Ill. App. 2d 226, 236, 256 N.E.2d 878, this court stated, quoting *Board of Education v. Pacific National Fire Insurance* (1958), 19 Ill. App. 2d 290, 299, 153 N.E.2d 498, 503-04:

> " 'It is not disputed that paragraphs 15 and 16 (of Chapter 29) are remedial and were intended to protect subcontractors and materialmen for whom no right of mechanic's lien exists against a public work. This being so, these paragraphs shall be read together in order to get the true intent of the legislature.' "

Ben Franklin relies on this language in arguing that the Contract for Public Works Act was intended to protect only subcontractors and materialmen, and not the public body that has contracted with the general contractor. The court in *Holtzman* clearly established that sections 1 and 2 should be read in unison. But the protections of section 2 are limited to those furnishing material "either as an individual or as a subcontractor for any contractor, with the State, *** shall

have the right to sue on such bond in the name of the State ***." (Ill. Rev. Stat. 1983, ch. 29, par. 16.) In addition, the *Holtzman* court went on to state that the legislative intent of the Contracts for Public Works Act was to provide a remedy *in addition* to that provided by section 23. (*Housing Authority v. Housman* (1970), 120 Ill. App. 2d 226, 239, 256 N.E.2d 878.) It follows, then, that the Contract for Public Works Act was indeed intended for the benefit of only subcontractors and materialmen, and that therefore the Commission does not have standing under the Act to compel Ben Franklin to pay the lien claims of Price and Armco.

Accordingly, for the foregoing reasons, we affirm the decision of the trial court with reference to the $570,293.65 withheld by the Commission pursuant to the Lien Act. As noted earlier, the Commission admitted earning interest of $47,628 on this withheld amount. Thus, there is at least $617,921.65 presently due Santucci from the Commission. This amount is in excess of the combined award which the trial court granted Price and Armco. Consequently, we hold that the sum which the trial court ordered the Commission to pay Price and Armco was fair and just.

Affirmed.

STAMOS and HARTMAN, JJ., concur.