BOARD OF LIBRARY TRUSTEES OF THE VILLAGE OF WESTMONT, Use Plaintiff-Appellant, for the use and benefit of Ozinga Bros., Inc., Plaintiff-Appellee, v. CINCO CONSTRUCTION, INC., Defendant.

First District (6th Division)   No. 1—94—1224

Modified opinion filed December 8, 1995, *nunc pro tunc* November 9, 1995.

James, Brooks, Adams & Tarulis, of Chicago (Richard J. Tarulis, of counsel), for appellant.

Berger, Newmark & Fenchel, P.C., of Chicago (Earl B. Lichten, of counsel), for appellee.

JUSTICE ZWICK delivered the opinion of the court:

Plaintiff, Ozinga Bros., Inc. (Ozinga), was a subcontractor engaged by the defendant, Cinco Construction, Inc. (Cinco), in the construction of the Westmont Public Library building. On April 2, 1992, Ozinga filed a two-count complaint in the circuit court of Cook County against Cinco. In its complaint, Ozinga named Cinco as a defendant and the Westmont Public Library Board (the Library Board),[1] the public body which had commissioned the library building, as a "use

---

[1]The proper name of public entity sued by Ozinga is "The Board of Library Trustees of the Village of Westmont." Following the filing of this opinion, we granted the Library Board's motion to correct the misnomer pur-

plaintiff." In count I, Ozinga alleged that Cinco had failed to pay it $17,546.17 for services rendered on the project. Ozinga also alleged that the Library Board was holding funds that were then due to Cinco. Ozinga claimed a lien on any funds held by the Library Board pursuant to the terms of section 23 of the Mechanics Lien Act (hereinafter referred to as section 23) (770 ILCS 60/23 (West 1994)). Count II was a breach of contract claim against Cinco.

On July 13, 1992, the Library Board filed a motion to transfer venue from Cook County to Du Page County pursuant to the terms of section 2—103(a) of the Code of Civil Procedure (735 ILCS 5/2—103 (West 1994)) (hereinafter we refer to the Code of Civil Procedure as the Code). This section of the Code provides that actions "against" a public, municipal, governmental or quasi-municipal corporation such as the Library Board must be brought in the county in which the government entity has its principal office or the county in which the transaction at issue or some principal part thereof occurred. The Library Board stated in the motion that Ozinga was preparing a summary judgment motion which established that Ozinga's cause of action was, in fact, an action "against" it. The Library Board argued that venue was therefore proper in Du Page County only, the county in which the Library Board was located. Ozinga vigorously opposed the motion, arguing that the Library Board was named merely a "use plaintiff" in the case and not as a defendant. The trial court denied the motion.

On August 3, 1992, Ozinga filed a motion for summary judgment against Cinco. The trial court granted the motion and retained jurisdiction over the case for purposes of an accounting.

On October 9, 1992, the Library Board answered written interrogatories tendered to it by Ozinga. In its answers, the Library Board stated that Ozinga had not perfected its statutory lien under section 23 until January 8, 1992, and that no funds were due or owing to Cinco at that time. Accordingly, the Library Board stated that it was not holding lien funds.

During subsequent discovery, on November 2, 1992, Ozinga filed a motion to disqualify the Library Board's attorneys because it was necessary, Ozinga alleged, for it to depose members of the law firm representing the Library Board in order for it to proceed with its case. The motion was denied by the court on April 12, 1993.

After discovery was completed, on June 24, 1993, the Library Board made a motion to dismiss the case pursuant to the terms of

suant to section 2—401(b) of the Code of Civil Procedure (735 ILCS 5/2—401 (West 1994)).

section 2—615 of the Code (735 ILCS 5/2—615 (West 1994)). The Library Board argued that section 23 made no provision for the pleading of a "use plaintiff" and that no cause of action had been stated against the Library Board in Ozinga's complaint. The trial court denied the motion on September 21, 1993, and denied a motion to reconsider on November 17, 1993.

On October 7, 1993, Ozinga filed a motion for summary judgment against the Library Board pursuant to the terms of section 2—1005 of the Code (735 ILCS 5/2—1005 (West 1994)). Although Ozinga did not dispute the fact that the Library Board owed no money to Cinco on the day Ozinga's statutory lien was perfected, Ozinga argued that discovery had established that the Library Board had made "improper payments" to Cinco's subcontractors and suppliers during the term of the construction contract. Ozinga argued that judgment should be entered against the Library Board because these payments were in violation of the Library Board's "fiduciary obligations to disburse funds to subcontractors on a *pro rata* basis and without preference." The court scheduled argument on the motion.

On March 21, 1994, just prior to oral arguments on Ozinga's summary judgment motion, counsel for the Library Board requested leave to file a motion for sanctions. The Library Board argued that it had incurred considerable expenses in defending against Ozinga's motion to disqualify the Library Board's attorneys and that Ozinga's subsequent summary judgment motion established that the motion to disqualify was not filed in good faith. The court summarily denied the Library Board's motion. The court then heard arguments on Ozinga's summary judgment motion and granted the motion in favor of Ozinga in the amount of $17,546.17.

The Library Board, on appeal, has argued that each of the trial court's rulings against it was erroneous. We are asked to review: (1) whether the trial court committed error in denying the Library Board's motion to transfer venue; (2) whether the trial court committed error in denying the Library Board's motion to strike and dismiss Ozinga's complaint; (3) whether the court committed error in denying the Library Board's motion for sanctions; and (4) whether the trial court improperly granted Ozinga's motion for summary judgment. Before embarking on an analysis of these issues, however, we first analyze the relevant provisions of section 23 of the Mechanics Lien Act.

■ Section 23 of the Mechanics Lien Act creates a subcontractor's lien in favor of those who furnish labor or materials to a public-works contractor, provided written notice of the lien is given to both the contractor and the public body. The lien created by this section is

not on the improvements for which the work and materials were furnished, but rather, upon the public funds due and owing the contractor at the time the lien is perfected. The court, in *Consolidated Construction Co. v. Malan Construction Corp.* (1963), 42 Ill. App. 2d 272, 275-76, 192 N.E.2d 263, explained section 23 as follows:

> "Section 23 provides, in brief, that: anyone who furnishes material or labor to a contractor who has a contract for public improvements, shall have a lien on the money due such contractor, provided, before payment has been made to the contractor, he notifies the municipality of his claim and within sixty [now ninety] days thereafter files a complaint for an accounting making the contractor a party defendant, and serves a copy of the complaint upon the proper public officials. If this procedure is followed, the municipality shall withhold the amount claimed until the final adjudication of the suit, or if it wishes it may turn over the amount of the claim to the clerk of the court in which the suit is pending."

Subsequent case law has reaffirmed that a subcontractor need not name the public body as a defendant in its complaint under section 23, as the statute requires only that written notice be given to the public body. *Northwest Water Comm'n v. Carlos V. Santucci, Inc.* (1987), 162 Ill. App. 3d 877, 516 N.E.2d 287.

In *Santucci,* the subcontractor complied with the statutory requirements of section 23 and brought suit against the contractor in an attempt to collect its fee. Although the subcontractor had perfected a lien over funds due from the public body to the contractor, and although the public body, in fact, withheld the disputed funds, the public body argued that the court could not order it to pay over the funds, in part, because the public body had never been named as a formal defendant in the subcontractor's suit. In resolving the issue against the public body, the court determined that "[j]udicial economy would seem to us to be in and of itself sufficient reason to obviate the necessity of having a prevailing subcontractor in the accounting action file a new and separate action to enforce collection of the monies withheld." (*Santucci,* 162 Ill. App. 3d at 888.) Thus, the court held that a public body which had been given proper statutory notice under section 23 was subject to the personal jurisdiction of the court and that the court could order the payment of funds held pursuant to a lien without the public body being named as a party defendant in the subcontractor's complaint.

The Library Board first argues that the trial court improperly denied its motion to transfer venue from Cook to Du Page County. The Library Board argues that, even though it was not named as an opposing party in Ozinga's complaint, Ozinga's claim was, in reality,

one "against" it as that term is used in the Code of Civil Procedure. The Library Board claims that venue lies exclusively in Du Page County, the county where the library building was erected and where the Library Board has its principal offices. Ozinga responds that, because the library Board was named as a mere lien holder in its complaint, the provisions of section 2—103 do not apply.

■ Code section 2—103(a) provides that "[a]ctions must be brought against a public, municipal, governmental or quasi-municipal corporation in the county in which its principal office is located or in the county in which the transaction or some part thereof occurred out of which the cause of action arose." (735 ILCS 5/2—103(a) (West 1994).) There is no question that the Library Board is a municipal corporation. The issue is therefore whether Ozinga's complaint was one "against" the Library Board.

■ In the case of *Management Association of Illinois, Inc. v. Board of Regents of Northern Illinois University* (1993), 248 Ill. App. 3d 599, 618 N.E.2d 694, this court determined that whether a cause of action is "against" the State does not depend on whether the State is named as a formal party, but, instead, whether a judgment for the plaintiff "could either 'operate to control the actions of the State or subject it to liability.' " (*Management Association*, 248 Ill. App. 3d at 607, quoting *Robb v. Sutton* (1986), 147 Ill. App. 3d 710, 713, 498 N.E.2d 267.) The same logic must apply here. We therefore turn to the language of Ozinga's complaint to determine whether Ozinga sought relief in its complaint "against" the Library Board.

■ A review of Ozinga's complaint shows that Ozinga sought relief "against" the Library Board from the very start of this case. In count I of the complaint, Ozinga makes the following prayer for relief:

"That the Plaintiff, OZINGA be decreed to have a lien on all monies, bonds and warrants due or to become due to CINCO, which are now in the possession of or under the control or direction of the [Library Board] and against which no vouchers have been issued, and that *said entity be ordered and directed to pay to the Plaintiff the amount due with costs.*" (Emphasis added.)

The fact that the Library Board was not named as a defendant does not change the fact that Ozinga sought an order which would subject the Library Board to the court's control. Indeed, this is what ultimately happened in this case as the trial court subsequently entered summary judgment "against" the Library Board.

In support of its argument that the venue provisions of Code section 2—103(a) should not be applied to section 23 actions, Ozinga cites a Court of Claims opinion, *J&W Allen Construction Co. v. Kramer* (1989), 41 Ill. Ct. Cl. 133. In this case the Court of Claims

concluded that, because section 23 contains no provisions governing venue, venue is proper in any county in the State. We note, however, that Court of Claims opinions are not precedential. (*Lohan v. Walgreens Co.* (1986), 140 Ill. App. 3d 171, 488 N.E.2d 679.) Moreover, the *J&W Allen Construction Co.* opinion fails to address the effect of Code section 2—103(a). By passing section 2—103(a), the General Assembly created a clear legal right in governmental units such as the Library Board to have actions against them brought in their home counties. We therefore conclude that the trial court improperly denied the Library Board's motion to transfer venue.

Although we have concluded that venue in this case was improper in Cook County, our review of the remaining issues indicates that remanding the proceedings for transfer to Du Page County would be inefficient and a waste of judicial resources. Because the record is sufficient for us to do so, we invoke our powers under Supreme Court Rule 366(a) (134 Ill. 2d R. 366(a)) and address the Library Board's remaining claims.

We turn our attention to the second issue raised by the Library Board, that is, whether the trial court erred in denying the Library Board's section 2—615 motion to strike Ozinga's complaint and dismiss the Library Board as a "use plaintiff." It is well settled that when we review the trial court's ruling on a section 2—615 motion, we accept as true all well-pleaded facts and draw from those facts all reasonable inferences which may be deemed favorable to the nonmoving party. (*Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 504-05, 565 N.E.2d 654; *Weil, Freiburg & Thomas, P.C. v. Sara Lee Corp.* (1991), 218 Ill. App. 3d 383, 388, 577 N.E.2d 1344.) We are not required to defer to the trial court's judgment in considering the motion; the question of whether a motion was properly granted or denied is one of law and is reviewed *de novo. T&S Signs, Inc. v. Village of Wadsworth* (1994), 261 Ill. App. 3d 1080, 1084, 634 N.E.2d 306.

In its motion, the Library Board argued that it had been misjoined as a "use plaintiff" in the case. The Library Board noted that section 23, the statutory authority by which Ozinga had brought count I of its complaint, made no provision for the pleading of a "use plaintiff" and the Library Board should be dismissed from the suit. Since count I of Ozinga's complaint was based entirely upon the provisions of section 23, the issue turns on whether a public body such as the Library Board may properly be named as a "use plaintiff" under the terms of that section and, if not, what consequence the improper naming of the Library Board should have on Ozinga's complaint.

■ Black's Law Dictionary defines the term "use plaintiff" as follows:

> "In common law pleading, one for whose use (benefit) an action is brought in the name of another. Thus, where the assignee of a chose in action is not allowed to sue in his own name, the action would be entitled 'A.B. (the assignor) for the Use of C.D. (the assignee) against E.F.' In this case, C.D. is called the 'use plaintiff.' " (Black's Law Dictionary 1543 (6th ed. 1990).)

Although we know of no Illinois case which discusses the "use plaintiff" designation in modern pleading practice, we note that the Public Construction Bond Act (30 ILCS 550/2 (West 1994)) does specifically provide for such pleading. Section 2 of this act states that anyone who furnishes labor or materials to a public works project and who holds a bond or letter of credit may sue on the bond or letter of credit "in the name of the State *** for his use and benefit." (30 ILCS 550/2 (West 1994).) The Library Board has pointed out, however, there are no similar provisions in the Mechanics Lien Act.

■ It is settled law that the rights created by the Mechanics Lien Act are in derogation of the common law and are to be strictly construed. (*Mixer v. Billingsley* (1982), 110 Ill. App. 3d 239, 241, 442 N.E.2d 275; *M.L. Ensminger Co. v. Chicago Title & Trust Co.* (1979), 74 Ill. App. 3d 677, 393 N.E.2d 663.) Strict compliance with the provisions of the Act upon which the right to a lien is based is therefore necessary. (*Malkov Lumber Co. v. Serafine Builders, Inc.* (1971), 1 Ill. App. 3d 543, 273 N.E.2d 654; *Suddarth v. Rosen* (1967), 81 Ill. App. 2d 136, 224 N.E.2d 602.) In light of the fact that neither case law nor the language of the Act itself supports "use plaintiff" pleading, we must agree with the Library Board and conclude that it was improperly named in the caption of Ozinga's complaint. If the General Assembly meant for subcontractors like Ozinga to have the right to sue in the name of public bodies like the Library Board, we are confident it would have specifically so stated in the Act.

Ozinga argues, even if its complaint improperly referred to the Library Board as a "use plaintiff" in its caption, this defect was a technical defect only and not one which should be fatal to its complaint. Ozinga further argues that it invoked the jurisdictional power of the circuit court over the Library Board even if reference to the Library Board had been wholly struck from the complaint. These arguments are persuasive.

■ We have already discussed the fact that a public body need not be formally named as a party at all in a subcontractor's complaint under section 23 in order for the circuit court to have authority to conduct an accounting and to disburse funds held pursuant to a

lien. (See *Santucci*, 162 Ill. App. 3d at 888.) The court in *Santucci* determined that the giving of the notice set out in section 23 empowers the circuit court to adjudicate issues related to the control of liened funds, even if the public body was not named as a defendant. Thus, although we conclude that the Library Board was improperly named as a "use plaintiff" in Ozinga's complaint, we cannot find this defect to be in any way significant. It is undisputed that Ozinga delivered the required statutory notices to the Library Board on January 8, 1992. The circuit court's failure to strike the reference to the Library Board as a "use plaintiff" was harmless. The trial court properly denied the Library Board's section 2—615 motion.

We turn our attention to the Library Board's claim that the trial court committed reversible error in not awarding sanctions for Ozinga's attempt to disqualify its attorneys pursuant to Supreme Court Rule 137. (See 134 Ill. 2d R. 137.) The Library Board argues that Ozinga's subsequent summary judgment motion, which argued that there were no issues of material fact to be decided, establishes that Ozinga's motion to disqualify the Library Board's attorneys was not made in good faith.

■ The decision to grant or to deny sanctions under Supreme Court Rule 137 is entrusted to the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. (*Fischer v. Brombolich* (1993), 246 Ill. App. 3d 660, 664, 616 N.E.2d 743.) A trial court is said to exceed its discretion only where no reasonable person would take the view adopted by it. If reasonable people would differ as to the propriety of the court's action, a reviewing court cannot say that the trial court exceeded its discretion. *Lewy v. Koeckritz International, Inc.* (1991), 211 Ill. App. 3d 330, 334, 570 N.E.2d 361.

The Library Board argues that if the Library Board's attorneys were, in fact, necessary witnesses in this case, as Ozinga claimed in its motion to disqualify, Ozinga could not have subsequently filed its summary judgment motion against the Library Board in good faith. The Library Board asks us to "send a clear signal that it is improper to file a motion to disqualify opposing counsel on the basis that he is a necessary witness, and then file a motion for summary judgment alleging there are no facts in dispute."

■ Although there is a certain logical elegance to the Library Board's argument, we decline to reverse the trial court's ruling on this issue in light of the deference we must properly give to its judgment on such matters. We will not find that Ozinga's motion to disqualify the Board's attorneys was made in bad faith when the trial court refused to do so. We note that Ozinga's motion to disqualify was filed November 2, 1992. Ozinga's summary judgment motion

against the Library Board was filed over 11 months later, on October 7, 1993. It is conceivable that Ozinga's unsuccessful motion to dismiss the Library Board's attorneys was made sincerely and at a time when Ozinga believed these attorneys would be necessary witnesses in the case, but that subsequent information or a good-faith change in its trial strategy led Ozinga to believe it could prevail on a summary judgment motion. The fact that Ozinga's summary judgment motion was granted by the trial court supports this inference. We are certain Ozinga would not have waited 11 months to file a summary judgment motion against the Library Board if it knew at the start of this time period that such a motion would be successful. We find no error in the trial court's decision to deny sanctions.

■■■ The Library Board's final argument is that the trial court committed error in granting Ozinga's summary judgment motion of October 7, 1993. The Code of Civil Procedure provides that summary judgment shall be entered when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (735 ILCS 5/2—1005(c) (West 1994).) In determining the existence of a genuine issue of material fact, courts must consider the pleadings, depositions, admissions, exhibits, and affidavits on file in the case and must construe them strictly against the movant and liberally in favor of the opponent. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867.) We apply a *de novo* standard of review when determining the propriety of summary judgment. *Shull v. Harristown Township* (1992), 223 Ill. App. 3d 819, 585 N.E.2d 1164; *Briggs Manufacturing Co. v. Industrial Comm'n* (1989), 212 Ill. App. 3d 318, 570 N.E.2d 1152.

Contrary to the trial court's ruling, the record in this case does not support Ozinga's summary judgment motion. The record shows that at the time Ozinga's lien was perfected on January 8, 1992, no money was due or scheduled to become due to Cinco on the project. Ozinga has never disputed this fact. Ozinga instead argued in its summary judgment motion, and now again on appeal, that the Library Board should pay its claim because the accounting conducted by the circuit court showed the Library Board "breached its duty as an impartial custodian of project funds which *could be* claimed by CINCO subcontractors." (Emphasis added.) Without any citation to legal authority, Ozinga argues the Library Board's actions in making payments to some subcontractors prior to January 8, 1992, were "a breach of its fiduciary obligations to all CINCO subcontractors, and a blatant demonstration of ethical misconduct."

Stripped of its rhetoric, Ozinga's position is that the Library Board was obligated to set aside funds for Ozinga's benefit before Ozinga had perfected its lien. Section 23, however, is clear: the only funds which the Library Board must set aside under the provisions of this section are funds "due or to become due" the subcontractor after the perfection of the subcontractor's lien. A lien is not perfected until the notice of lien is filed. (*Central Lime & Cement Co. v. Leyden-Ortseifen Co.* (1927), 245 Ill. App. 48.) The Library Board had no duty under section 23 to attach funds prior to the time Ozinga perfected its lien.

Ozinga's arguments that the Library Board had to treat it as a fiduciary or that the Library Board was precluded from paying Cinco subcontractors at Cinco's direction during the term of the contract are likewise without merit. It is axiomatic that, before there can be fiduciary duty, there must be a fiduciary relationship. (*Lagen v. Balcor Co.* (1995), 274 Ill. App. 3d 11, 653 N.E.2d 968.) Ozinga has alleged no basis for its conclusion that a public body can be made a fiduciary under these circumstances. Indeed, Ozinga has never asserted this theory in its complaint. Contrary to Ozinga's bare and unsupported assertions before both the trial court and this court on appeal, the record affirmatively shows that the Library Board did not make improper payments to Cinco or its subcontractors.

Of the checks written by the Library Board to Cinco subcontractors, five checks were issued in February 1991, at Cinco's written request. One check was issued in October 1991, pursuant to a lien which had been timely filed by another subcontractor. Three checks were issued in November 1991 and were paid directly to Cinco's subcontractors pursuant to the request and approval of Cinco's president which had been made at a Library Board meeting on November 14, 1991. Again, Ozinga has not disputed these facts.

After carefully reviewing the record, we find nothing to support the trial court's decision to enter summary judgment against the Library Board. In fact, unchallenged affidavits in the record affirmatively establish that the Library Board is without liability in this case. There is simply no evidence whatsoever in this record which would support a finding under section 23 of the Mechanics Lien Act. Therefore, consistent with the above analysis, we vacate the circuit court's entry of summary judgment against the Library Board and enter judgment against Ozinga on count I of its complaint. Again, we decline to remand the case in the interests of judicial economy and pursuant to our powers under Supreme Court Rule 366 (134 Ill. 2d R. 366).

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part, vacated in part and judgment is entered in favor of the Library Board.

Affirmed in part; vacated in part; and judgment entered.

EGAN and RAKOWSKI, JJ., concur.