**James K. OBERST, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 14A04–0005–CR–222.**

Court of Appeals of Indiana.

April 6, 2001.

Transfer Denied June 28, 2001.

Susan K. Carpenter, Public Defender of Indiana, David P. Freund, Deputy Public Defender, Attorneys for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Joseph A. Samreta, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Chief Judge.

James K. Oberst appeals his convictions for two counts of sexual misconduct with a minor, both class B felonies.[1] Oberst raises two issues, which we restate as:

1) whether the admission of his confession constitutes fundamental error; and

2) whether the trial court abused its discretion in imposing the maximum sentence allowed by law.

We affirm in part, reverse in part, and remand for resentencing.

The facts most favorable to the convictions follow. On December 30, 1998, Oberst was charged with two counts of sexual misconduct with a minor, both class B felonies. The informations alleged that Oberst had sexual intercourse with fourteen-year-old P.G. on two separate occasions in July 1998. At Oberst's trial, P.G. testified that while at an auction one evening in July 1998, Oberst took her behind some hay bales and told her to bend over and pull her pants down. Oberst attempted to insert his penis into P.G.'s rectum. When that was unsuccessful, "the next thing [P.G.] knew [they] were over at [Oberst's] truck" where Oberst inserted his penis into P.G.'s vagina. Record, p. 372. Following the completion of P.G.'s testimony, the State called Detective Ron Morgan

---

1. Ind.Code § 35–42–4–9(a)(1).

to the stand. Detective Morgan testified that Oberst, along with his attorney, came to the Sheriff's Department on December 2, 1998, and gave a tape recorded statement after being advised of his *Miranda* rights and signing a waiver of rights form. In the statement, Oberst admitted to having sexual intercourse with P.G. on two separate occasions: once behind some hay bales and once in the bed of his truck. Oberst's tape recorded confession was played for the jury without objection. The jury was also given a written transcript of the interview to read while listening to the tape.

At the conclusion of the evidence, Oberst's counsel made a motion for judgment on the evidence as to Count I. Oberst's counsel argued that the State did not meet its burden of proving that Oberst had engaged in sexual intercourse with P.G. on two occasions because P.G. testified that Oberst did not have sexual intercourse with her behind the hay bales but only in the truck. The State opposed the motion, arguing that Oberst's tape recorded confession that was admitted into evidence established that he had sexual intercourse with P.G. on two separate occasions. The trial court denied Oberst's motion for judgment on the evidence, and the jury found Oberst guilty of both counts of sexual misconduct with a minor. Oberst was sentenced to twenty years on each count, to be served consecutively, for a total of forty years imprisonment.

## I.

■ The first issue is whether the admission of Oberst's confession constitutes fundamental error. Oberst argues that the trial court erred in admitting his confession into evidence because there is no independent evidence, aside from his confession, that he had sexual intercourse

with P.G. behind the hay bales.[2] In Indiana, a defendant's extrajudicial confession is not admissible unless there is independent proof of the corpus delicti. *Johnson v. State*, 653 N.E.2d 478, 479 (Ind. 1995). To establish the corpus delicti, the State must produce evidence, other than the confession, that demonstrates: " '1) the occurrence of the specific kind of injury and 2) someone's criminal act as the cause of the injury.' " *Id.* (quoting *Willoughby v. State*, 552 N.E.2d 462, 466 (Ind.1990)). The corpus delicti need not be shown beyond a reasonable doubt; rather, the evidence must merely support an inference that a crime was committed. *Id.* at 480. The purpose of this rule is to reduce the risk of convicting a defendant based on his confession for a crime that did not occur, to prevent coercive interrogation tactics, and to encourage thorough criminal investigations. *Id.* at 480 n. 1.

Oberst acknowledges that he did not object to the admission of his confession at trial and that such a failure normally results in waiver of the issue on appeal. However, Oberst argues that the error was fundamental because being "convicted of and being sentenced to a term of twenty years for a crime that the State did not independently establish occurred ... constitutes a blatant violation of basic principles ... and [he] has been denied fundamental due process by being so convicted." Appellant's Brief, p. 17.

■ The fundamental error exception to the waiver rule is an extremely narrow one. *Mitchell v. State*, 726 N.E.2d 1228, 1235 (Ind.2000), *reh'g denied.* To rise to the level of fundamental error, the error must be so prejudicial to the rights of the defendant so as to make a fair trial impossible. *Id.* In other words, "the error 'must constitute a blatant violation of basic prin-

---

2. Oberst challenges only his conviction on    Count I.

ciples, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process.' " *Id.* (quoting *Wilson v. State,* 514 N.E.2d 282, 284 (Ind.1987)).

Here, Oberst was charged with two counts of sexual misconduct with a minor as class B felonies by "perform[ing] sexual intercourse with P.G." Record, pp. 10, 12. Therefore, in order to convict Oberst on both counts, the State was required to prove that on two separate occasions Oberst had sexual intercourse with P.G. Sexual intercourse is defined as· "an act that includes any penetration of the female sex organ by the male sex organ." Ind.Code § 35–41–1–26.

P.G.'s testimony on direct examination, in pertinent part, is as follows:

Q. Okay. And what did [Oberst] do there around by the hay bales?

A. The first time he just—he told me to take down my pants and bend over and . . .

Q. Did he insert his penis into your vagina?

A. No, behind.

Q. Okay. He put it in your behind?

A. Backwards.

Q. Okay. You were bending over?

A. Yeah.

Q. Okay. And, did he put it in your rectum?

A. He tried to—he tried to attempt to, but he said it wasn't working.

Q. Then what did he do?

A. Then, the next thing I knew, we was over at his truck in—and, then he—he . . .

Q. Did he insert it in your vagina behind the hay bales?

A. No, not behind the hay bales. At the—behind—in his truck, in the bed of his truck.

\* \* \* \* \* \*

Q. Okay. When he was in the back of the truck with you, did he insert his penis into your vagina?

A. Yeah.

Record, pp. 371–372. Then, on cross examination, P.G. testified as follows:

Q. [P.G.], you had stated that the first contact that you had with Mr. Oberst was behind the hay bales, is that correct?

A. Yes.

Q. And, you testified to this, I just want to make sure we get a clear understanding of what happened that evening. Do you know what sexual intercourse is?

A. Yes.

Q. Okay, what is sexual intercourse?

A. When a—when a guy, you know, does it to a girl, and stuff.

Q. Based on what you know of that, behind the hay bales, did he—do you think you had sexual intercourse, meaning did he stick his penis inside your vagina?

A. Not behind the hay bales. In his truck he did.

Q. Okay, was he able to stick his penis inside your—your anus, your rectum—behind the hay bales?

A. No, he attempted to.

Record, pp. 375–376.

■ As the State seems to concede, P.G.'s testimony established only one incidence of sexual intercourse. That incident occurred in the back of Oberst's truck. As to the events that occurred behind the hay bales, P.G. testified unequivocally that Oberst did not have sexual intercourse with her at that time. Nevertheless, the State

argues that it established the corpus delicti of both counts of sexual misconduct with a minor because P.G.'s testimony that Oberst attempted, albeit unsuccessfully, to insert his penis into her anus constitutes deviate sexual conduct.

Ind.Code § 35–42–4–9(a)(1) provides:

A person at least eighteen (18) years of age who, with a child at least fourteen (14) years of age but less than sixteen (16) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits sexual misconduct with a minor, a Class C felony. However, the offense is:

(1) a Class B felony if it is committed by a person at least twenty-one (21) years of age.

Deviate sexual conduct, in turn, is defined as an act involving "(1) a sex organ of one person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object." Ind.Code § 35–41–1–9. Therefore, the State reasons that because there was an act involving the sex organ of Oberst and the anus of P.G., Oberst committed deviate sexual conduct, thus supporting Oberst's conviction for sexual misconduct with a minor.

■ The problem with this reasoning, as pointed out by Oberst, is that Oberst was charged with sexual misconduct by "perform[ing] sexual intercourse with P.G.," not by committing deviate sexual conduct. Record, pp. 10, 12. Therefore, we must consider whether the variance between the charging information and the proof adduced at trial is material or fatal.

The test to determine whether a variance between the proof at trial and a charging information or indictment is fatal is as follows:

(1) was the defendant misled by the variance in the evidence from the allegations and specifications in the charge in the preparation and maintenance of his defense, and was he harmed or prejudiced thereby; [or]

(2) will the defendant be protected in [a] future criminal proceeding covering the same event, facts, and evidence against double jeopardy?

*Allen v. State*, 720 N.E.2d 707, 713 (Ind. 1999).

In *Allen*, the defendant was charged with criminal deviate conduct. *Id.* at 712. Although that crime could have been proven by either proof: 1) of an act involving the sex organ of one person and the anus of another; or 2) by the penetration of the anus by an object, the State chose to charge the defendant with criminal deviate conduct involving his sex organ. *Id.* at 712–713. However, the proof presented at trial indicated that the defendant committed criminal deviate conduct with a blunt object rather than his sex organ. *Id.* at 712. Our supreme court reasoned that because the State limited the charge to a sex organ rather than employing the broader "object" language in the information, there was a material variance between the charging information and the proof adduced at trial, and it reversed the defendant's conviction. *Id.* at 713–714. Thus, the court held that the State was required to provide evidence that plainly matched the charge. *Id.* at 714.

The facts of this case are similar to *Allen*. Here, the State could have proven that Oberst committed sexual misconduct with a minor by showing that Oberst either: 1) had sexual intercourse with P.G.; or 2) committed deviate sexual conduct with P.G. *See* I.C. § 35–42–4–9. However, the State limited its charge to sexual intercourse. As was the case in *Allen*, such limitation could result in Oberst being recharged and tried again on the same facts and evidence, and we therefore hold that

the variance between the charging information and the proof adduced at trial is material. *See Allen,* 720 N.E.2d at 713–714.

■ Having determined that the State did not establish the corpus delicti for one of the two counts of sexual misconduct with a minor and that the variance in proof is material, we conclude that the trial court erred in admitting Oberst's confession into evidence. But does such error rise to the level of fundamental error? We hold that it does. Had Oberst's confession not been admitted into evidence, he could have been convicted of only one count of sexual misconduct with a minor because P.G.'s testimony indicated that Oberst had sexual intercourse with her on only one occasion. This error results in the denial of fundamental due process. *Cf. Elliott v. State,* 450 N.E.2d 1058, 1066–1067 (Ind.Ct.App. 1983) (holding that admission of defendant's confession was not fundamental error because there was sufficient evidence to establish the corpus delicti of the charged crime independent of the defendant's statements) *rehg denied; see, e.g., Brooks v. State,* 526 N.E.2d 1171, 1172–1173 (Ind.1988) (holding that it was fundamental error to convict the defendant of a crime for which he was not charged). For this reason, we reverse and remand with instructions to vacate one of Oberst's convictions for sexual misconduct with a minor.[3] *See Waye v. State,* 181 Ind.App. 66, 69, 390 N.E.2d 700, 702 (Ind.Ct.App.1979); *Wilson v. State,* 164 Ind.App. 665, 674, 330 N.E.2d 356, 362 (Ind.Ct.App.1975).

## II.

The second issue is whether the trial court abused its discretion in imposing the maximum sentence allowed by law. Oberst contends that all of the aggravating factors that the trial court relied on are improper, that the trial court failed to find mitigating factors, and that his sentence is manifestly unreasonable.

■ Sentencing decisions, including the decision to enhance a presumptive sentence, rest within the sound discretion of the trial court and such decisions will be reversed only upon a showing of a manifest abuse of that discretion. *Thacker v. State,* 709 N.E.2d 3, 9 (Ind.1999), *reh'g denied.* The trial court's discretion includes the weighing of aggravating and mitigating factors to impose an appropriate sentence. *Ector v. State,* 639 N.E.2d 1014, 1015 (Ind.1994), *reh'g denied.* If a trial court uses aggravating or mitigating circumstances to impose an enhanced sentence, it must: 1) identify all significant mitigating and aggravating circumstances; 2) state the specific reason why each circumstance is determined to be mitigating or aggravating; and 3) articulate the court's evaluation and balancing of the circumstances. *Thacker,* 709 N.E.2d at 9. This requirement safeguards against the imposition of arbitrary and capricious sentences because it ensures that the trial court considered proper matters when imposing its sentence. *Wilcox v. State,* 664 N.E.2d 379, 383 (Ind.Ct.App.1996). It also allows a reviewing court to determine the reasonableness of the imposed sentence. *Id.* In order to determine whether the trial

---

3. *Allen* supports our determination that there is a material variance between the allegations in the charging information and the proof adduced at trial, but we decline to remand the instant case for retrial, as our supreme court did in *Allen. Allen,* 720 N.E.2d at 714. In the instant case, P.G. testified that she and Oberst engaged in sexual intercourse on only one occasion. Therefore, retrial of the reversed charge of sexual misconduct with a minor by means of sexual intercourse would be pointless, and the charge should be vacated.

court adequately explained the reasons for the sentence, we will examine both the written sentencing order and the trial court's comments at the sentencing hearing. *Davies v. State*, 730 N.E.2d 726, 741 (Ind.Ct.App.2000), *reh'g denied, trans. denied, cert. pending.* However, "[a] sentence enhancement will be affirmed in spite of a trial court's failure to specifically articulate its reasons if the record indicates that the court engaged in the evaluative processes and the sentence imposed was not manifestly unreasonable." *Buzzard v. State*, 712 N.E.2d 547, 554 (Ind.Ct. App.1999), *trans. denied.*

In imposing its sentence, the trial court in this case found the following aggravators: 1) that the victim of the crime is mentally or physically infirm; 2) that Oberst is in need of correctional or rehabilitative treatment that can best be provided by commitment to a penal facility; 3) that Oberst was in a position of trust with the victim and her father; and 4) the risk that Oberst may commit another crime of a similar nature. The trial court found one mitigating circumstance, namely that Oberst has no criminal record. Implicitly finding that the aggravating factors outweighed the mitigating factor, the trial court sentenced Oberst to a term of twenty years, which is ten years more than the presumptive sentence for a class B felony.[4] *See* Ind.Code § 35–50–2–5.

■ We first address whether there is evidence to support the trial court's reliance on the victim's mental or physical infirmity as a statutory aggravating circumstance. In its written statement, the trial court noted that P.G. was "mentally or physically infirm, and, her father testi-

fied to that fact." Record, p. 162. In its oral sentencing remarks, the trial court added this observation: "Definitely mentally, and the father testified to that. I think that was, also, obvious when the victim testified." Record, p. 571. Oberst argues that the trial court failed to set out specific facts to support its finding and that there is nothing in the record that indicates that P.G. was either physically or mentally infirm.

The record indicates that sometime prior to July 1998, P.G. was in a serious car accident and began having numerous seizures approximately three months later. P.G. went to several doctors and hospitals in an effort to get her seizures under control, and was taking three different medications for her seizures in July 1998. As a result of these medications, P.G. experiences sleepiness, being in "kind of a daze," and being "silly, laughing, goofy, . . . cutting up and stuff like that." Record, pp. 347, 358. P.G. is also unable to attend regular school because of panic attacks, and, as a result, is home schooled by her father. Moreover, Oberst's mother testified at trial that Oberst had told her that "you could tell [P.G.] was mentally slow." Record, p. 362. In fact, Oberst himself testified at trial that on one occasion other children were picking on P.G. and that he felt sorry for her because he has handicapped kids of his own. In addition, the trial court noted that P.G.'s mental problems were evident in her testimony at trial.

Although Oberst argues that there is nothing in the transcript of P.G.'s testimony that would indicate that she is mentally infirm, the trial court observed P.G.'s de-

---

4. The trial court actually sentenced Oberst to twenty years on Count I and twenty years on Count II, and ordered them to be served consecutively. However, because we reverse and remand with instructions to vacate the conviction on one count of sexual misconduct with a minor, we need not address the sentence imposed for that count or the imposition of consecutive sentences. *See supra* Part I.

meanor and heard her testimony. As such, it could infer from its observations of her whether she was mentally infirm. *See, e.g., Hall v. State,* 504 N.E.2d 298, 300 (Ind.Ct.App.1987) ("The question of mental deficiency was a question of fact to be decided by the trier, who is in the position to observe her and hear her testify."). Therefore, Oberst's arguments that trial court failed to set out specific facts to support its finding and that there is nothing in the record that indicates that P.G. was either physically or mentally infirm are without merit. Consequently, we conclude that the trial court did not abuse its discretion in relying on P.G.'s mental infirmity as an aggravating factor. *See, e.g., Ector,* 639 N.E.2d at 1015.

■ We next address whether the trial court properly considered the need for correctional or rehabilitative treatment as an aggravator. In order to use this aggravator to support an enhanced sentence, the trial court must do more than simply recite the statutory language; it must give a specific and individualized reason why the defendant is in need of correctional treatment that can best be provided by a period of incarceration in excess of the presumptive sentence. *Ajabu v. State,* 722 N.E.2d 339, 343 (Ind.2000), *reh'g denied.* Although the trial judge did not provide a statement indicating why Oberst was in need of correctional treatment for a period of time longer than the presumptive sentence in her written findings, she did orally state at Oberst's sentencing hearing that "I think the nature of the crime itself certainly indicates that [Oberst] needs treatment, because this would not be a normal thing to do." Record, pp. 570–571. Nevertheless, because the trial judge did not articulate how Oberst's correctional or rehabilitative treatment could be achieved through the imposition of an enhanced sentence rather than the presumptive, we conclude that the trial court improperly relied on this aggravating circumstance. *See Taylor v. State,* 695 N.E.2d 117, 122 (Ind. 1998) (holding that trial court improperly considered the need for correctional and rehabilitative treatment as an aggravator because it did not specify how such rehabilitation could be achieved through the imposition of an enhanced sentence rather than the presumptive sentence).

■ We next address whether there is evidence to support the trial court's conclusion that Oberst was in a position of trust with the victim and her father. In support of this aggravator, the trial court stated at the sentencing hearing that "[t]here was testimony at the trial that [Oberst] told the victim that he had a handicapped child himself, which was certainly a means of having something in common with her." Record, p. 571. Oberst argues that at best he could be described as an acquaintance and that the mere fact that he may have had something in common with P.G. does not establish a close and involved relationship so as to be considered to be in a position of trust with that person. We agree.

Although being in a position of trust with the victim is certainly a valid aggravating circumstance, the relationship between the perpetrator and victim must be closer and more involved than that which was present between Oberst and P.G., who met one another at an auction the month that the events giving rise to this action occurred. Therefore, because Oberst cannot be considered to be in a position of trust with P.G., the trial court improperly considered this as an aggravating circumstance. *See Edgecomb v. State,* 673 N.E.2d 1185, 1198 (Ind.1996) (holding that defendant, who was a neighbor to the victim and occasionally borrowed things and casually conversed with her on occasion, was not in a position of trust with the

victim so as to warrant its consideration as an aggravating circumstance), *reh'g denied*.

Finally, we address whether the trial court properly considered the risk that Oberst may commit another crime of a similar nature as an aggravator. The only statement that the trial judge gave to explain her use of this aggravator is that "I feel that there is a very great deal of risk that [Oberst] might commit another crime of the same or similar nature in the future." Record, p. 571. Oberst argues that the trial court gave no basis for its conclusion that he was likely to commit another crime and that there are no facts in the record to support such conclusion.

Although P.G.'s testimony at trial only established one incidence of sexual intercourse, it is clear that Oberst engaged in inappropriate sexual behavior with her on more than one occasion. Moreover, the trial court noted that Oberst lacked remorse for his actions.[5] Consequently, we conclude that the trial court did not abuse its discretion in relying on the risk that Oberst may commit another crime of a similar nature as an aggravating factor. *See, e.g., Williams v. State*, 690 N.E.2d 162, 172 (Ind.1997) (holding that the statement of the court's reasons was adequate because the record clearly disclosed the factual basis for the court's determination); *Manns v. State*, 637 N.E.2d at 845 (noting that lack of remorse may be an underlying consideration in determining the risk that a defendant may commit another crime).

Having concluded that the trial court properly relied on two aggravators to enhance Oberst's sentence, we next address the mitigating factors. The trial court is not required to find mitigating factors nor is it obligated to accept as mitigating each of the circumstances proffered by the defendant. *Johnson v. State*, 734 N.E.2d 242, 246 (Ind.2000); *Magers v. State*, 621 N.E.2d 323, 324 (Ind.1993). " 'Only when the trial court fails to find a significant mitigator that is clearly supported by the record is there a reasonable belief that it was overlooked.' " *Johnson*, 734 N.E.2d at 246 (quoting *Legue v. State*, 688 N.E.2d 408, 411 (Ind.1997)).

Oberst argues that the trial court failed to give weight to the following mitigating circumstances that were fairly established by the record: 1) that imprisonment will result in undue hardship to his dependents and his mother; and 2) that Oberst suffered a brain injury at age fifteen. With respect to these two alleged mitigators, the trial judge stated,

... the Court has a great deal of compassion for the Oberst' [sic] parents and the children, but that doesn't mean that someone who has problems is entitled to commit serious crimes, and Class B Felonies are, certainly serious crimes.... I realize that [Oberst] had a serious accident, but no one has testified or presented to this Court that [Oberst] does not understand the difference between right and wrong. So, I do not consider that his mental history is a mitigating circumstance.

---

5. Although Oberst argues that the trial court did not specify in its findings how Oberst demonstrated his lack of remorse, we note that the trial court was in the position to observe Oberst's demeanor at trial and specifically commented upon Oberst's demeanor in discussing his lack of remorse. Thus, we find no error. *See Manns v. State*, 637 N.E.2d 842, 845 (Ind.Ct.App.1994) (citing *Schiro v. State*, 479 N.E.2d 556, 559 (Ind.1985)(noting that the trial court can properly consider non-evidentiary information such as a defendant's remorse or lack thereof), *reh'g denied, cert.*

Record, pp. 570, 572. Therefore, the trial court considered and rejected Oberst's contention that these circumstances should be considered as mitigating factors. As the trial court was not required to accept Oberst's version of what constitutes mitigating circumstances, we find no error. *Magers,* 621 N.E.2d at 324.

In conclusion, the trial court properly considered the fact that P.G. is mentally or physically infirm and that there is a risk that Oberst might commit another crime as aggravators. It also identified Oberst's lack of criminal history as a mitigator. A single valid aggravator is sufficient to support an enhanced sentence. However, we have determined that two of the four aggravators identified by the trial court are not proper ones here. We are not confident that we can say what "weight" was given to those aggravators or how the "scales" would balance for the trial court after their removal. Therefore, we remand to the trial court so that the valid aggravators may be reweighed against the mitigating factor.[6] *See Bluck v. State,* 716 N.E.2d 507, 515 (Ind.Ct.App.1999) (remanding for resentencing when the reviewing court could not determine what weight the trial court assigned to invalid aggravators).

For the foregoing reasons, we affirm in part, reverse in part, and remand for resentencing.

Affirmed in part, reversed in part, and remanded.

SULLIVAN, J., and MATHIAS, J., concur.

*denied,* 475 U.S. 1036, 106 S.Ct. 1247, 89 L.Ed.2d 355 (1986).

6. Because we remand for resentencing, we need not address Oberst's argument that his sentence is manifestly unreasonable.